LUCY A. HATCH AND HUSBAND v. THE BOARD OF SUPERVISORS OF MONROE COUNTY ET AL.

1. HIGHWAY. *Discontinuance of, by Board of Supervisors.*
   The Board of Supervisors of a county in this State has the power to discontinue a public highway under its supervision, and to surrender the right of the public to use the same.

2. SAME. *Surrender of public right thereto.*
   Where the Board of Supervisors of a county orders that a certain highway " be discontinued as a public road," and the overseer thereof discharged, but "that said road be kept open as a private right of way," there is not such a surrender of the public right as to warrant the owner of land traversed by the road in inclosing it for his private use. And if he does so inclose it, the board may appoint an overseer to put the road in condition for public use, and he may remove fencing or other obstructions put on the road by such landowner.

APPEAL from the Chancery Court of Monroe County.
Hon. LAFAYETTE HAUGHTON, Chancellor.

On the fifth day of January, 1875, the Board of Supervisors of Monroe County passed an order in relation to a certain highway of that county, known as the " Black Swamp Road," as follows: " Ordered that the Black Swamp Road, from Aberdeen to Dr. Ward's gin-house, be discontinued as a public road, and that the overseer, J. B. Genber, be relieved from duty on said road; also, ordered that said road be kept open as a private right of way." This road traversed a section of land belonging to the appellant, Lucy A. Hatch, and, after the foregoing order was made, she inclosed the road within her fields and cultivated it for agricultural purposes. On the third day of April, 1877, the board rescinded

" so much of said order as discontinued said road as a public road." And on the 7th of August, 1877, the board appointed Thomas M. Sanders, one of the appellees, overseer of the road, and assigned him hands for working the same. He proceeded to remove the fencing on the road, and to put it in condition for travel by the public. The appellants thereupon obtained a temporary injunction restraining the Board of Supervisors and the overseer from opening the road. On motion, the injunction was dissolved; and the complainants appealed.

*Murphy, Sykes & Bristow,* for the appellants.

1. The Board of Supervisors had the power to discontinue a public road. Const. Miss., art. 6, sect. 20. See also *Nicholson* v. *Stockett,* Walk. 67; Poindexter's Code, 351, sect. 2.

2. The order of January 5, 1875, discontinuing the " Black Swamp Road," being valid, could not be rescinded. The rule that the judgment of a court is final till reversed, applies to judgments of police or supervisors' courts. *Arthur* v. *Speed,* 49 Miss. 410; *Carroll* v. *Board of Police,* 28 Miss. 38; *Board, etc.,* v. *Grant,* 9 Smed. & M. 77; *Yalabusha County* v. *Carbry,* 3 Smed. & M. 529; *Ross* v. *Lane,* 3 Smed. & M. 695; *Nicholson* v. *Stockett,* Walk. 75.

3. If the order of January 5, 1875, discontinued the road, then it reverted to Mrs. Hatch, as if the highway had never been located on her land. *Nicholson* v. *Stockett,* Walk. 67; *Barclay* v. *Howell's Lessee,* 6 Pet. 498; *Harris* v. *Elliott,* 10 Pet. 25; *Perley* v. *Chandler,* 6 Mass. 454; *The Commonwealth* v. *Peters,* 2 Mass. 125; *Vaughn* v. *Stuzaker,* 16 Ind. 338.

*Houston & Reynolds,* for the appellees.

1. The Board of Supervisors did not intend, by the order of the 5th of January, 1875, to discontinue the Black Swamp Road, for they declared that it should " be kept open as a private way." A private right of way is limited to particular persons, or classes of persons. 2 Bla. Comm. 35, note; 7 Mich. 446. As the order did not limit the right of travel, the

road would remain a highway.  Ang. on Highw. 3 ; 3 Kent's Comm. 432 ; 7 Mich. 446.

2. The Board of Supervisors had no power to discontinue a public road, except in the manner provided in sects. 2335 and 2336 of the Code of 1871.  Such boards are not authorized by sect. 20 of art. 6 of our Constitution to discontinue public roads, unless in pursuance of a legislative enactment on the subject.  As to the power of such *quasi* corporations, see Dill. on Mun. Corp. 32, 33, 101, sect. 55 ; 7 Ohio St. 115 ; 23 How. (U. S.) 436.  The power to discontinue highways can only be exercised under a legislative grant of authority. 8 Mass. 457 ; 30 Conn. 288 ; 31 Conn. 604 ; 21 Conn. 473 ; 46 Barb. 622 ; 2 Pa. St. 289 ; 20 Ga. 341 ; 6 J. J. Marsh. 22 ; 4 Bac. Abr. 671.  At common law, a highway can only be discontinued by non-user for such time as amounts to an abandonment.  16 Wend. 531 ; 46 Barb. 624.

CAMPBELL, J., delivered the opinion of the court.

The Board of Supervisors had the right to discontinue the public road ; but the proper construction of the order of the board is, that it did not purpose to surrender the right of the public to the road designated, but merely to discharge the overseer and hands from that district.  It is certain that the board did not consent that the road should be closed, for the order in express terms directs that it shall  "be kept open as a private right of way."  It is difficult to tell what was the precise meaning of keeping the road  "open as a private right of way," but it is manifest that the road was to be  "*kept open;*" and, until an *unequivocal* surrender by the Board of Supervisors of the right of the public to the road, the owner of the fee had no right to close it.

It was proper for the board, at any time, to appoint an overseer and persons to work the road, and the order of August 7, 1877, doing this was a valid exercise of power.

Decree affirmed.