Noxubee County *v.* Long *et al.**

[106 So. 83.    No. 24941.]

(In Banc.    Nov. 16, 1925.)

1. HIGHWAYS. *Abandonment of road held shown by minutes of board of supervisors of highways, reciting orders appointing road overseers.*

   Minutes of board of supervisors of highways for each of four successive years, showing orders appointing road overseers for various of the county roads, reciting, "Road Link No. 11 discontinued," and as to other roads, other than those for which appointment was made, reciting, "Road Link No. ——No appointment," *held* to show abandonment of No. 11.

2. COUNTIES. *Enough that by fair and reasonable interpretation meaning of minutes of boards of supervisors ascertainable.*

   Minutes of boards of supervisors of highways, through which only can they act, will be looked on with indulgence, and though unskillfully drawn, if by fair and reasonable interpretation their meaning can be ascertained, they are sufficient.

3. APPEAL AND ERROR. *Case may not on appeal be transformed into a different one from that in trial court.*

   The supreme court being one of appeal will not permit the case as presented to trial court to be transformed into an entirely different one on appeal.

4. ATTORNEY AND CLIENT. *Admission of defendant's counsel held within scope of declaration.*

   Admission of counsel for defendant county, in action for damages for abandonment of highway, that the road had been abandoned,

*held,* relative to its being binding on defendant, within the scope of the declaration.

5. Attorney and Client. *County is bound by admissions of counsel.* County when sued, as expressly authorized by statute, stands in court like any other litigant, and is bound by admissions and stipulations of attorneys touching the action to the same extent that an individual would be bound.

Ethridge, J., dissenting.

---

*Headnotes 1. Highways, 29 C. J., Section 250; 2. Counties, 15 C. J., Section 118, Highways, 29 C. J., Section 281; 3. Appeal and Error, 3 C. J., Section 620; 4. Attorney and Client, 6 C. J., Section 157; (Anno); 5. Attorney and Client, 6 C. J., Section 157.

Appeal from circuit court of Noxubee county.

Hon. J. I. Sturdivant, Judge.

Action by J. R. Long and others against Noxubee county. Judgment for plaintiffs, and defendant appeals. Affirmed.

*Dent & Lucas* and *Jacobson & Brooks,* for appellant.

I. . There was no abandonment of the road, because there was no order duly passed and spread upon the minutes of the board, looking to an abandonment of the public road, and in the absence of an order looking solely to this end, there can be no legal abandonment, for which this suit can be maintained. *Smith* v. *Board of Supervisors of Tallahatchie County,* 124 Miss. 417; *Adams* v. *Bank,* 103 Miss. 144; *Jefferson County* v. *Grafton,* 74 Miss. 434; *Boutwell v. Board of Supervisors,* 91 So. 12; *Amite County* v. *Mills,* 138 Miss. 222, 102 So. 465; *Mangum* v. *Smith County,* 127 Miss. 192; *Bridges & Hill* v. *Board of Supervisors of Clay County,* 58 Miss. 817; 11 Cyc. of Law and Procedure, pages 396-401.

There is no theory upon which it can be held that the record shows an abandonment. The appellee never contended, and does not now, that there was ever an order passed and spread upon its minutes by the board of supervisors. It contends that, in the matter of ap-

pointing road overseers on the road docket—not a part of the minutes—that no overseer was appointed for this road, and that opposite this road, number eleven by name, is marked this word, "Discontinued." They argue and contend that while this does not of itself discontinue the road, it is of evidential value of a corroborative nature that it was done. They argue that having failed to appoint an overseer of a road, the county would be estopped from saying that the road had not been legally abandoned. See *Mills* v. *Amite County, supra.*

A discontinuance is not abandonment within the "damage" meaning of section 17 of the Constitution. 1 words and Phrases (Second Series), page 3; *Hicks* v. *Steigleman,* 49 Miss. 377.

We contend further that the board of supervisors, being a court of limited special jurisdiction, has no implicatory powers and nothing will be presumed, and as to every subject it handles that all jurisdictional facts must affirmatively appear on the record, and in their absence, even the order itself, if passed, would be void and of no effect. *Boutwell* v. *Board of Supervisors,* 91 So. 14; *Adams* v. *Bank,* 103 Miss. 744; *Craft* v. *Board of Supervisors of DeSoto County,* 79 Miss. 618; *Sullivan* v. *LaFayette County,* 58 Miss. 70; *Hinton* v. *Perry County,* 84 Miss. 546; *Grignon* v. *Aston,* 11 L. Ed. (2nd Ed.), at page 340; 23 Cyc., page 1082.

The court may be somewhat confused about the admission of counsel to the effect that the road was abandoned. Not that we think this is necessary, but in the motion for a new trial the affidavits of both the trial attorneys were inserted therein. That witnesses, including members of the board, would not be permitted to testify as to what order the board passed, which was not placed on the minutes, was decided in *Smith* v. *Tallahatchie County,* 124 Miss. 36. Certainly, if the board or officers could not testify about the matter, then the trial attorney under a misapprehension could not admit something as having happened when it does not appear on the minutes.

Admissions by counsel or by agent of principals in order to be binding can only extend to the matter in controversy. There can be no liability by implication. Nothing can be read into the admission by implication. The sole question herein was the question as to whether Noxubee county by an "unrecorded minute" of the supervisors had made itself liable to an individual for abandonment of a road. This was denied. The plaintiff contended that while the road had been abandoned in fact, that the record of abandonment had never been placed upon the minutes. The defendant when asked by the court, "Do you deny it?" said "No, we admit it." "Admit what?" "Admit the matter plead by the declaration. We admit that the road, if abandoned, was abandoned in just that way." That is, that the order was agreed upon, but never put on the minutes of the board of supervisors, and, consequently, no liability was incurred, and no case is before this court, and no case was before that court at that time. See *Cook* v. *Whitfield,* 41 Miss. 541; 16 Cyc. of Law, "Evidence," page 1042; *Corley* v. *Bryant,* 19 R. I. 404, 35 Atl. 309.

We contend that these admissions made by us were never made with any idea, except as to the matters and issues then before the court, as stated in the declaration. It would not have been logical and consistent to have gone further.

Can the Longs after leading the county on with a declaration, bristling with non-recoverable allegations, proceeding upon a theory crosswise with the law, secure an admission as to the truth of their facts which make out no case, and then be heard to say for the first time in this court: "'It is true my declaration stated no cause of action, and it is true that you admitted facts upon which I could not recover; yet, I think the admission must be construed to mean something not then before the court, and not then in controversy." This would indeed be an anomalous situation. An analysis of appellees' contention leaves them in just this situation.

*C. G. Richardson, Britton & Sherrod* and *Baskin, Miller & Wilbourn,* for appellees.

A county is liable for the abandonment of a public road where damage has resulted therefrom to the landowner. A claim for the damages for the abandonment of a road may be presented to the board of supervisors by the landowner who contends that he is damaged thereby, and that such damage may be considered and allowed by the board or may be disallowed.

Where the claim is disallowed, after presentation to the board, there is a right in the landowner to sue for the damages that he claims have resulted to him by reason of the abandonment of the public road. It is not disputed, and cannot be, that these appellees presented their claim to the board, and they proved by the record, without contradiction, that such claim was presented and disallowed by the board of supervisors by an order on their minutes. The appellees had the right, therefore, to sue the county and present their claim under the laws of the state of Mississippi. The county thereby became a litigant in court and was entitled to appear and authorized to appear by counsel. Sections 309 and 312, Code of 1906. As a litigant in court, the county has no less and no greater rights than any other litigant.

The courts of the land are under the duty to recognize counsel who appear on behalf of a county or state or municipality or the United States Government when any of them are before the court as a litigant. All matters of pleading and procedure are indentically the same. No municipality, county, state and not even the United States can exercise the privilege and duty in court as a litigant through counsel, and not be bound to the same extent, character and degree that any other litigant would be bound by the pleadings and by the admissions of counsel, and by the character of instructions asked by or at the instance of the municipality, county, state or United States. *Scarborough* v. *Harrison Naval Stores,* 95 Miss. 497, 52 So. 143. The rule is that

a stipulation made by an attorney in respect to a pending cause applies to a stipulation made by an attorney of a county. *Lockwood* v. *Blackhawk County,* 34 Iowa 235.

We submit, therefore, that the county of Noxubee cannot complain of the action of the lower court in overruling its motion for a new trial on this record.

The case, however, does not rest entirely upon the fact that the county appeared in court through counsel and conceded the abandonment of the road and tried the case on that theory. There are four orders from the minutes of the board of supervisors exhibited with the declaration, showing the abandonment of the road by the board of supervisors. The board of supervisors by its minutes solemnly adjudicated the discontinuance of this particular road.

The minutes of the board of supervisors, like the judgments of the justices of the peace, are not required to be precise in form. There is no particular form of order required. These orders of the board of supervisors, taken from the minutes, were orders passed at regular meetings of the board, and when the board had before it the matter of appointment of road overseers for the existing roads in the county. The board proceeded to enter its adjudication and findings, and not only did not appoint a road overseer for road link No. 11, but did not do so for the adjudicated and assigned reason that the board found and adjudicated and spread upon its minutes the fact that the road was discontinued.

Every jurisdictional fact, therefore, with reference to the abandonment of the road appears filed, of record. It is not contended by appellants, nor can it be, that the statutes marked out any particular form of procedure to be gone through with by the board of supervisors with reference to the abandonment of the road. Indeed, we think that this is frankly conceded by counsel. Section 7105, Hemingway's Code.

We do not see the relevancy of *Mills* v. *Amite County,* cited by counsel. And all that was decided in the Mills

case was that the county could not be bound on an implied contract.

As a general proposition, where it is sought to bind the board of supervisors by virtue of an express contract, such contract must be reflected by the minutes of the board. But in the very nature of the case the abandonment of a public road by the county is just as damaging, in point of fact, where it is an actual abandonment without an order of the board to that effect as it is with an order spread upon the minutes. The cessation of the upkeep of the road by the board of supervisors, the refusal to appoint overseers for it, refusal to expend money in repairing it, the discontinuance of a ferry or way of getting across a stream which is vital to the existence of the road, all are affirmative acts that can be committed only by the county and may be done without formal record thereof on the minutes. And we maintain that an abandonment of a public road can be just as effectually accomplished without an order on the minutes of the board of supervisors, and even more so, because it is the actual discontinuance of the road that hurts.

But in the case at bar, the actual discontinuance of the road was accompanied with a declaration and adjudication to that effect on four different minutes of the board of supervisors.

The county through its counsel not only admitted that the road had been abandoned and tried the case on that theory, but followed it up by asking the court to give instructions to the jury, assuming abandonment of the road and directing the jury to return a verdict for the appellees. The supreme court has no original jurisdiction. It sits only as a court of review in matters of this nature.

In the last analysis, it seems to us, that the strenuous effort on the part of counsel is to get this appellate court to undo what the counsel for appellant persuaded the lower court to do, on the theory that after the result had been accomplished, counsel felt that they had made a mistake in their deductions of the facts and the law.

We submit that no authority for such position can be presented; that to reverse the case on that ground would be to establish a very disconcerting precedent, and the fact that the appellant happens to be Noxubee county, to our minds, furnishes no reason whatever why this court should violate the rule and put itself in the position of reversing the action of the lower court, which from every legal viewpoint, as we see it, was the result, not merely of the admissions of one of the counsel, but of the county's representative in the conduct of the trial, in trying it on the admission and hypothesis that there was no dispute whatever about the abandonment and that the abandonment was sufficiently plead and set forth in the declaration and the exhibits thereto, and that the only question was as to the amount of damages.

We have but one law in this country. That law is the same for all. When the law authorized a county to enter the courts as a litigant, and be represented by attorneys, it did not give them special privileges, nor enjoin upon the courts any special tenderness in their behalf, nor make the courts the guardians of either the counties or their counsel. No individual litigant should be heard on appeal to say the case should be reversed, or judgment set aside, when he asked the court to enter that judgment. And we see no reason why Noxubee county should be accorded that privilege here. See *Humphrey County* v. *Caslien,* 129 Miss. 236; 90 So. 838; *Railroad* v. *Handy,* 108 Miss. 421, 66 So. 783.

Argued orally by *H. H. Brooks,* for appellant, and *R. E. Wilbourn* and *Chas. Richardson,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellees, J. R., J. P., Winston, and Virginia Long, brought this action in the circuit court of Noxubee County, against that county (which, for the sake of greater clarity, will be referred to as board of supervisors and board) for damages claimed to have been suffered by

them because of the abandonment by the board of super-
visors of the public highway in said county designated on
the minutes of the board as "Road Link No. 11," upon
which appellees' plantation abutted. There was a trial
and judgment for appellees for fifteen hundred dollars
and costs, from which the board of supervisors prose-
cutes this appeal.

The principal question in the case, and the only ques-
tion we deem of sufficient seriousness to call for a dis-
cussion by the court, is whether the highway in question
had been abandoned as such by the board of supervisors.
Notwithstanding that is made the main question in the
case in this court, that is not true of the trial in the court
below. The abandonment of the highway lay at the very
threshold of appellees' case. It was charged in their
declaration as the foundation of their right to recover.
But on the trial of the case the board's attorney admit-
ted that it had been abandoned and the trial proceeded
alone on the question of the amount of recovery. The
controlling facts were as follows:

The highway involved was known as "World's Ferry
Road" and was designated on the board of supervisors'
minutes as "Road Link No. 11." Appellees, contending
that the road had been abandoned as a highway by the
board, duly presented their claim to the board of super-
visors for the damages which they claimed to have suf-
fered because of such abandonment, which claim the
board disallowed, and thereupon appellees brought this
action in the circuit court, where there was a trial on the
pleadings and evidence of the respective parties and a
judgment rendered for fifteen hundred dollars.

Appellees alleged in their declaration that in Decem-
ber, 1919, the board of supervisors abandoned and dis-
continued the highway; that although the order then
made to that effect was not entered on the minutes of the
board, nevertheless subsequent orders were made by
the board which were entered on its minutes to the same
effect; that at the January, 1921, meeting of the board, an
order was placed on its minutes appointing road over-

seers for the various public roads of the county which recited, among other things, "Road Link No. 11 discontinued;" that at its January, 1922, meeting in an order on its minutes dealing with the same subject, it was recited, "Road Link No. 11. Road discontinued;" that again, the board in its minutes at its January, 1923, meeting, dealing with the same subject, recited, "Road Link No. 11, discontinued;" and again, at its January, 1924, meeting, the board, dealing with the appointment of road overseers, recited in its order, "Road Link No. 11, discontinued." The minutes of the meetings of the board referred to, in dealing with other road links in the county which had not been abandoned as public roads but over which no overseers were appointed, recited, for illustration, "Road Link No. 12, no appointment." These orders of the board were made exhibits to appellees' declaration. The declaration avers that because of such abandonment appellees' farm lands which abutted on said highway had been damaged; that said highway was the sole and only ingress and egress to and from their plantation; that the improvements on their plantation had been placed there because of and in reference to said highways; and that the discontinuance of said highway and the failure of the board of supervisors to maintain it and have it worked made appellees' lands composing said plantation inaccessible and of much less value than theretofore.

The board did not demur to appellees' declaration, but took issue thereon. During the trial of the case, the court asked this question, addressing the attorney for the board of supervisors:

"Q. You don't deny the abandonment of the road, do you?" To which counsel made this response: "A. No; but we deny any damage."

That question during the further progress of the trial was treated by the court and both parties as having been settled. There was no issue of fact or of law between them thereafter touching the question whether the road had been abandoned. The question was not only not sub-

mitted to the jury by the instructions of the court, but the instructions for both the board and appellees directed the jury peremptorily to find a verdict for appellees. This was done in at least two instructions for the board. The only question submitted to the jury was the question of the amount of damages appellees were entitled to.

We hold, in the first place, that the minutes of the board of supervisors show that the highway in question had been abandoned; that the county had surrendered its easement therein; that the public no longer had any interest in the highway. The minutes of boards of supervisors reciting their orders and judgments, like those of justices of the peace, will be looked upon with indulgence. Although they may be unskillfully drawn, if by a fair and reasonable interpretation their meaning can be ascertained, they will be sufficient to answer the requirements of law. Boards of supervisors, it is true, can only act through their minutes. But in this case they have acted through their minutes. In appointing overseers for the public roads of the county, the board of supervisors deal with a part of the jurisdiction conferred on them by section 170 of the Constitution—that of control over roads, bridges, and ferries. All the roads of the county were being dealt with. Probably it would have been more in keeping with regularity to have dealt with the abandonment of the highway in a separate minute; but, on the other hand, if one were trying to ascertain whether a road was a public highway or not, we doubt if the fact could be more readily ascertained than by going to its minutes appointing overseers for the different roads of the county.

And, furthermore, this court is a court of appeal, not a court of original jurisdiction; it is a court organized for the purpose of reviewing the rulings and judgments of the trial courts. As such, this court will not permit the case, as presented to the trial court, to be transformed into an entirely different case in this court. It is contended that the admission of counsel representing the

board that the road in question had been abandoned is not binding on the board, because it was an admission beyond the scope of appellees' declaration. As we construe the declaration, it alleged that the road in question had been abandoned as a highway, and as evidence of it there was presented with the declaration the four orders of the board entered in 1921, 1922, 1923, and 1924, reciting that the road had been abandoned as a highway. We do not think the admission of counsel representing the board to that effect was beyond the scope of the declaration, but within its scope and purpose.

The statute expressly gives the counties of this state the right to sue and be sued. When a county sues, or is sued, it stands in court like any other litigant. It is not a favored litigant. It is bound by the admissions and stipulations of its attorneys touching the action to the same extent that an individual would be bound. Appellees' declaration charged that this road had been abandoned; it was the foundation of their case. The board of supervisors, through its counsel, during the trial, made a solemn admission on the record that that was a fact; that it would not be questioned; and then went further and had the court to instruct the jury that appellees were entitled to recover, which instruction, of course, alone was based on the fact that the road had been abandoned.

We find no merit in the other contentions of the board and do not deem the questions raised of sufficient importance to require a discussion by the court.

*Affirmed.*

Etheridge, J., (dissenting).

In order to get the contentions clear, I will state the substance of the declaration. The declaration alleged that the board of supervisors of Noxubee county, Miss., did in the year 1919 abandon and discontinue the road in said county and state known as the World's Ferry Road; said road beginning at Ash creek and continuing to

World's Ferry, and being known and designated as Road Link No. 11 of said Noxubee County, Miss. Plaintiff alleged that this order does not show upon the minutes of the said board of supervisors of Noxubee County, Miss., but was passed by them at their November or December, 1919, meeting. It is then alleged that on the ——— day of January, 1921, the board of supervisors in regular meeting of said board did adopt an order, a copy of which is attached to plaintiffs' bill, and asked to be considered as a part thereof, to which reference is made as often as is necessary for the purpose of identification and is marked "Exhibit A." Said order shows the appointment of road overseers for the county for said year, and that no overseer was appointed for said Road Link No. 11, but that said road link was discontinued. This order shows on its face that the board was dealing with the appointments of road overseers for the different highways of the county, and that said board was not dealing with the propriety or necessity of abandoning or discontinuing the road. Three other exhibits to the bill of like tenor and effect show on their face that the board was not dealing with the subject of abandoning or discontinuing roads, but were dealing with the appointment of road overseers. The two things are entirely disconnected.

The plaintiffs' pleadings expressly state that the order of the board of supervisors was not entered upon the minutes of the board and the other orders were introduced merely as facts in the chain of evidence to show an abandonment in fact without an order being entered upon the minutes of the board. The admissions of abandonment referred to in the majority opinion were made under a misapprehension of the facts, all of which were shown to the circuit judge on motion for a new trial, and there is no change of the case from that made before the lower court, because, when an admission is made under a mistake of fact and is made manifest to the court before the case is finally concluded in the court, the court should set it aside where it is manifest that a wrong result has been reached in the trial, and it is strictly with-

in the province of this court to review the action of the
trial judge on the motion for a new trial seasonably made.
Regardless of whether the admission was made under
mistake, however, it should not go beyond the scope of
the pleading, and the result of the majority opinion is
to extend the admission beyond the scope of the declara-
tion.   The pleadings are construed most strongly against
the pleader, and the express statement that the order was
not entered upon the minutes must be taken as true, as
there was no effort at any stage of the trial to amend the
declaration.

In *Smith* v. *Tallahatchie County,* 124 Miss. 36, 86 So.
707, we held that a board of supervisors can only act as
a body through its minutes; that its minutes are the ex-
clusive evidence of what the board did; and that parol
evidence is not admissible to show what action the board
took.   This case also involved a road jurisdiction of
the board, and this doctrine has been repeatedly an-
nounced in this court throughout its history.   Its min-
utes are the exclusive evidence of what the board did.
The theory made by the declaration is a case of aban-
donment by nonuser and nonworking of the roads, and by
acquiescence on the part of the board.   This theory is
wholly unsustainable.   The only way that a board can
legally abandon a public highway of a county is through
a solemn order entered upon its minutes in an appro-
priate proceeding therefor.

In *Morris* v. *Covington County,* 118 Miss. 875, 80 So.
337, we held that an abutting landowner on a public high-
way in the country has a special property right in the
easement and free uses of the public road for ingress
and egress to and from his property, and that in order
to deprive him of such rights the procedure must conform
to that involved in taking private property for the public
use.   In 118 Miss. at page 881, 80 So. 337, the court said:

"The defendant below, Covington county, demurred to
the declaration on the ground that the county had a law-
ful right to abandon its public road, and that such aban-
donment was not the taking or damaging of private prop-

erty for public use, as there was no taking or damaging of private property within the meaning of the Constitution.

"The precise question has never been passed upon by this court. However, the principle involved seems to have been settled by this court. In *City of Laurel* v. *Rowell,* 84 Miss. 435, 36 So. 543, it is held that the abandonment or closing of an astablished street is a taking or damaging of private property for public use within the Constitution, and authorizing compensation to the abutting property owner. We think that the same principle should apply to the abandonment and closing of public highways in the county where abutting landowners are specially damaged by such discontinuance and abandonment by the county. The abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. The right of access is appurtenant to his land and his private property. To destroy this right is to damage his property.

"When a public highway is established, the abutting owner acquires a special easement therein in connection with his land for purposes or access to his premises, and this special easement is distinct, and is in addition to the right of user of the road, possessed by him as one of the general public for travel. 'The right to a road or street which the landowner possesses as one of the public is different from that which vests in him as an adjoining proprietor, and it is also distinct and different from his rights as owner of the servient estate' "—citing 2 Elliott on Roads and Streets (3d Ed.), section 1180.

In *Jackson* v. *Monroe County,* 124 Miss. 264, 86 So. 769, the decision of this court is to the same effect.

In the case of *City of Laurel* v. *Rowell,* 84 Miss. 435, 36 So. 543, referred to in the *Covington County Case,* 118 Miss. 875, 80 So. 337, the proceeding was an injunctive proceeding wherein the property owner sought to restrain the city of Laurel from closing a street without

notice and hearing and without paying compensation for damages to the property by reason of such closing. The prayer of the bill was that the city of Laurel and the Laurel Improvement Company, another property owner who had procured the street to be closed and had built a fence across each end of its property and erected some buildings on it, be enjoined from further meddling with the rights of the complainant, and be commanded to re-open and re-establish said street, and that the Laurel Improvement Company be required to remove all obstructions placed by it in said street. There was a motion to dissolve the injunction in that case, which motion was overruled and an appeal granted to settle the principles of the case. The court held in that case, on page 440 of 84 Miss., 36 So. 543, as follows:

"When people build on the side of, and with reference to, a public street, they acquire an easement in its free user by them and the public and in the resultant value of such user. This is property, and cannot be taken from them or damaged by closing the street, except upon compensation first paid. The closing of the street is a taking of the easement for the public use in the purview of our Constitution."

And at page 441 of 84 Miss., 36 So. 543, the court said:

"Countless oppressions of private citizens, too poor, too ignorant, or too humble to excite attention or enlist the advocacy of the influential, never see the sunlight of the courts of law. Many schemes which are hatched in 'the perfumed chambers of the great' are feathered and winged in these councils, to the injury of the lowly and the poor. They must be held in with a tight rein at the bar of the people sitting in the persons of their judges in their solemn tribunals of justice. All the citizens of a town have the right to have their public thoroughfares, streets, or alleys, whether acquired by dedication or user, kept open for their own use and the use of visiting strangers who come for commerce or social intercourse. They should never be closed except when plainly for the public good, and cannot then be

closed except upon compensation first paid for any damage to abutting proprietors.''

In the record before us there is no evidence and no minutes of the board of supervisors to reflect that the board ever took into consideration the public necessity or convenience in closing the highway. It gave no notice of any such intention so far as the proof in the record shows, and it is not suggested that any such notice was ever given. It is insisted, however, that this is a matter entirely for the board, and that the citizen is limited to the recovery of damages, and that he has no right to a hearing upon the question of closing the road or highway. Such argument is squarely in the teeth of section 14 of the Constitution, which provides that no person shall be deprived of life, liberty, or property without due process of law. The citizen might not want the highway closed. The necessity in fact might not arise warranting its being closed. The citizen might be able fully to show that the closing of the highway would be a public calamity as well as a private injury to property owners having property abutting thereon. There is no right to act arbitrarily in the matter. It cannot be the law that the board of supervisors of one county can obstruct a highway or roadway of the county without notice to any one. The board must act upon reason, and its action must be a judicial action adjudging jurisdictional facts, and before the board adjudges these facts, some notice must be given to the abutting property owners and should be given to the general public.

It is contended that there is no authority for such notice. If that be true, then no road or highway can be discontinued until the legislature provides a procedure. But in my opinion section 4400, Code of 1906, Hemingway's Code, section 7080, may be construed as a statute providing a procedure. The words ''altered or changed'' in said statute are certainly broad enough to embrace the abandonment or discontinuance of a public highway, and in my opinion should be given that construction which

would make it embrace a proceeding to abandon or discontinue a highway.

In *Craft* v. *De Soto County,* 79 Miss. 618, 31 So. 204, the court held that the board of supervisors in laying out and opening a public road exercised special statutory authority, and that it is essential to the validity of their proceedings that the jurisdictional facts appear of record.

Section 170 of our Constitution gives boards of supervisors jurisdiction over roads, ferries, and bridges, and I cannot see the difference in this constitutional jurisdiction and proceedings to lay out a public road, and the proceedings to abandon or discontinue a public road.

Our courts have generally held that the board minutes or records must show jurisdictional facts, and that an order made by the board without showing such facts is void. It seems to me that the present case is in direct conflict with the case of *Craft* v. *De Soto County.*

In *Warren County* v. *Mastronardi,* 76 Miss. 273, 24 So. 199, the court held in effect that the county did not abandon the road although the active use of the road or the active route of the road had been changed and the old way had not been used to any extent for a period of thirty years, and that the county had not acquired a new right of way by reason of the constant use of the new route and the nonuse of the old route, but that the right of way existed in the old route although not used during a long period of time.

Prior to the Constitution of 1890, abutting property owners had no right in the road that was recognized as a property right. At least such seems to be the effect of the decision in *Nicholson* v. *Stockett,* Walk. 67, but that case held that where there was a property right the Constitution required notice and a hearing. This case was contrary to practically the whole trend of judicial decision upon the rights of abutting property owners upon highways and streets. See 29 C. J. 523, section 234 *et seq.,* and notes; 15 Am. & Eng. Enc. L., p. 404 *et seq.*

In the case of *Hatch* v. *Monroe County,* 56 Miss. 26, decided prior to the Constitution of 1890, the court held that the board of supervisors had a right to discontinue a public highway and to surrender the right of the public to use the same, but in that case, where the board made such order and reserved the right of way as a private way, the court held that the board could reopen the road for public travel without compensation to the property owner. The facts in that case are that on the 5th day of January, 1875, the board of supervisors of Monroe county passed an order relating to one of its highways as follows:

"Ordered that the Black Swamp Road, from Aberdeen to Dr. Ward's ginhouse, be discontinued as a public road, and that the overseer, J. B. Genber, be relieved from duty on said road; also, ordered that said road be kept open as a private right of way."

This road traversed a section of land belonging to Hatch, and after the passage of the foregoing order, she inclosed the road within her fields and cultivated it for agricultural purposes. On the 3d day of April, 1877, the board rescinded "so much of said order as discontinued said road as a public road." And on the 7th of August, 1877, the board appointed an overseer of the road, and assigned him hands for working the same. He proceeded to remove the fencing on the road, and to put it in condition for travel by the public; and the appellent, Hatch, enjoined the overseer and the board from opening the road. The court held that the board had the right so to do. That case is directly contrary to the result reached in the present case. In the Hatch case there was an order discontinuing the road as a public road. After making the order the board adjourned and more than two years thereafter reopened the road, and it is manifest that the power to do so was that the board had power to discontinue the working of the road and reserve the right of way. The road was not worked, yet it was not abandoned in the eyes of the law. In the present case the board merely discontinued working the road. Manifestly the

right of way was left for the use of any person who saw proper to use it and keep it in repair. The evidence in the case before us was not predicated upon the difference of value of the place with the worked road and its value with an unworked right of way, but the evidence for the plaintiff proceeded upon the theory that there was a complete abandonment of the road and that it had reverted to the property owners abutting thereon. Some of the evidence for the plaintiff pertained to the cost of buying a right of way from their property for a public highway.

It is said in the majority opinion that the county was cut off because it obtained an instruction to the jury to find for the plaintiff for nominal damages, and that he could not shift his theory from a recognition of that right there to a denial of it here. The court ignored the fact that the court below refused the county the following instruction:

"The court instructs the jury for defendant that a public highway is the name given to the right of the public to travel over the lands of another. The right may be acquired by the public in either of the following ways: (1) By dedication; (2) by condemnation; (3) by user for ten years. And if the jury believe from the evidence in this case that any of the roads testified about in this case have been used by the general public for ten years or more, with a claim of right to go over said roads, then said roads are public highways and cannot be legally closed to the public by the owners of the land through which the road runs."

The court ignores the fact that the plaintiff had obtained a peremptory instruction for nominal damages and in addition any amount resulting from depreciation in the fair market value of the lands of the plaintiff by reason of the abandonment by the county of the World's Ferry Public Road through the lands of the plaintiff. In other words, after the plaintiff had obtained a peremptory instruction and the defendant had been refused the instruction set out above, which was its first instruction, it had a right to shape its case according to the law

which the court below had ruled to be applicable, and it should not in any sense be regarded as an estoppel or as an adoption voluntarily of a legal theory. The record shows throughout that the county was contesting the plaintiff's right to recover damages, and inasmuch as the plaintiff was allowed damages for the right of way on the theory that the right of way had reverted to the property owners, and that consequently the plaintiff had no means of ingress and egress to and from his property, the judgment should be set aside and the case tried on the law.

Section 17 of the Constitution has wholly changed the right of the board of supervisors to discontinue a highway without a hearing and the payment of damages to the property owners. It certainly would be promotive of the public welfare to hold that the board could not discontinue and abandon a public highway without notice to the public, and I desire to call the attention of the legislature to the question so that some appropriate scheme for the protection of the public, as well as of the property owners abutting the highways, may be adopted.