BROOM, Justice:
Wrongful cutting and removal of timber by appellants, Walter Heard, Albert Heard, Janie Kelly Roberts, and J. H. Moore, from appellee’s land in Jasper County -ftras averred in the bill of complaint of Boutwell, appellee. This appeal is from an adverse decree entered against appellants by the Chancery Court of the First Judicial District of Jasper County. The decree awarded appellee a judgment against all four appellants for $4,025.70 in damages for the value of the trees cut from his property, plus an additional $35,970 statutory penalty as against all appellants except Moore. We reverse in part and modify the decree.

FACTS

Appellee’s forty acre tract is bordered on the north, east and south by lands of the Kelly Estate, consisting of 360 acres, which estate is owned by some seventeen persons (including appellants). Kelly Estate lands are all fenced. The same fence which runs along the westerly margin of appellee’s forty acre tract extends on around the entire Kelly Estate properties. On May 9, 1971, Swep Kelly, who owned an undivided interest in the Kelly Estate property, employed appellant Moore to cut the Kelly Estate timber and Moore was told to cut only within the fenced in area. Moore was shown about the property by appellant Walter Heard, and on May 11 began operations to cut the timber. Later it was learned that Moore cut not only the Kelly Estate timber but also the timber of appellee. Appellee contacted Walter and told him about the cutting, after which the two met and discussed a settlement. When no settlement could be reached, appellee filed his suit. Other facts will be discussed as they appear relevant to the issues discussed by the court.
I.
Appellants’ first contention is that the chancellor’s finding that the value of the timber cut from appellee’s land was $4,025.70 was contrary to the overwhelming weight of the evidence. It was admitted by all of the appellants that some of the timber in question was cut from appel-lee’s land. In fact, the only acceptable evidence presented in this case that any timber was cut from appellee’s land by Moore was the testimony offered by the appellants. Moore testified and admitted in his brief before us that he unknowingly went upon the lands of appellee and cut approximately eighty-five units of pine pulpwood and forty units of hardwood, having a total value of approximately $750. Walter Heard admitted that he instructed Moore to cut within the fences.
*923 The only testimony presented by appellee as to the amount of timber that was cut from his land was the testimony of a forester, Guy. In this type case the rule is that the burden of proof is upon the damaged party to show that the defendant cut his timber and also to show the number of such trees so cut. Rowan v. Beattie, 130 Miss. 449, 94 So. 232 (1922). In his testimony, Guy stated that he did not know who cut the timber. His testimony makes it clear that he had no way of knowing whether Moore cut the timber or whether other parties cut some of it before or after Moore’s cutting. Guy examined appellee’s land in April 1972, about nine months after appellants Moore and Walter Heard had been on the land. According to Guy, some of the timber which he saw that had been cut could have been cut as late as January or February 1972. Appellee’s other witnesses showed that during the past few years eight or ten different groups had cut timber from the Kelly Estate, and some timber had been cut just a short time before the cutting by appellant Moore.
The appellee did not meet the burden of proof and show by a preponderance of the testimony how much timber was actually cut on his land by these particular appellants and, therefore, the judgment against them for the value of the trees cut cannot be allowed to stand in excess of the $750 valuation of the timber according to Moore’s testimony.
II.
 Appellants next contend that the trial court erred in assessing statutory damages against the two Heards and Janie Kelly Roberts in the amount of $35,970. Statutory damages were sought under Mississippi Code Annotated section 95-5-3 (1972), which provides that the statutory penalty may be awarded for cutting down another’s timber “without the consent of the owner.”
The evidence shows that Walter had lived on the Kelly property in his childhood but had been away from the property for the past twenty-two years and was only about eighteen years of age when he moved away. In order to assist the ailing Swep Kelly (now deceased), Walter came back on a visit in May 1971. During that visit and at the instance of Swep, who lived on the property, Walter told appellant Moore to cut within the fences. He stated that he did not know anyone (other than the Kelly estate owners) owned forty acres of land within the fences which surrounded the Kelly property. At the time the arrangements were made, Swep Kelly was sick and not present when the instructions were given by Walter to Moore as to where to cut the timber. The appellant Janie Roberts, an elderly woman in poor health, was also not present when Moore was told where to cut. According to the record, Janie did not appear in court and testify at the trial on account of her poor health.
Evidence also showed that the appellee’s own witness, Early Lee Davis, had previously, within a few years, cut timber off the Kelly property. When Swep Kelly did point out to Davis where to cut, Davis stated that he would not have seen the painted lines around the appellee’s property or the hack marks on the trees except for the fact that Swep pointed them out.
The record shows that appellant Albert Heard was in New York City at the time of the sale of the timber and during the negotiating of the sale. As to Albert, the record is totally lacking any evidence whatsoever that he came upon the property within a short time before, during, or after the cutting of the timber. The only scintilla of evidence in the record that would connect Albert with the cutting was in the testimony of appellee. At the trial Bout-well was asked about his conversation with the appellant Moore concerning the cutting of the timber, and the following *924 dialogue took place between him and his counsel:
Q. Did he make any statement as to whether this property, your 40, was pointed out to be cut ?
A. He didn’t say about that. He said Walter Heard, I’m not sure about it but I think he said Walter and Albert employed him to cut it, said it was theirs.
This testimony simply is not enough to make Albert responsible in any sense for the cutting.
Pertinent here is the rationale of Rutland v. Corley, 287 So.2d 433 (Miss.1973). Rutland, as well as numerous other cases, holds that the statutory penalty for cutting trees “is highly penal and must be strictly construed.” Application of the statute has been allowed by this Court with caution for the statutory penalty. We have not applied the statute except where the facts are well proven and the trespass is shown to have been willful, or the negligence so gross, or the indifference so real, or the lack of good faith so evident as to be the equivalent of willfulness. Applying the rule set forth in Rutland, supra, to the evidence in this case, neither of the appellants can properly be held liable for the statutory penalty. Strawbridge v. Day, 232 Miss. 42, 98 So.2d 122 (1957).
In the case before us the appellants pleaded and established their good faith in the cutting of the timber, and we think their testimony was not sufficiently controverted to overcome their version. It is obvious that the cutting of the timber was done for the purpose of providing money to pay for the care and treatment of Swep Kelly, who was then ill and who died shortly thereafter. One of the appellants (Janie), received a part of the money, but uncontradicted evidence showed that it was for the purpose of compensating her for looking after Swep Kelly. It was not shown that any of the appellants or any of the owners of any interest in the Kelly Estate benefitted from the cutting of the timber except Swep Kelly, who instigated the cutting. Swep caused Walter to finalize the arrangements for the cutting of the timber, and Walter showed Moore where to cut.
The suit is neither against Swep Kelly nor his estate as such, but against others who did not (except Janie) receive a penny from the sale of the timber. This is not a case where either one of the persons charged broke down a fence and willfully or through gross negligence trespassed upon the Boutwell property. It is significant that the Boutwell land is almost like an island within the Kelly Estate. The fence along Boutwell’s western boundary was an extension of the fence which also ran along the west lines of the Kelly Estate, both north and south of the Boutwell forty acre tract. As stated in Strawbridge, supra, one sued for the statutory penalty is not required to prove a total lack of negligence on his part, but he may exonerate himself by showing that he did not willfully or through wantonness or recklessness commit the trespass in question.
We think the testimony was sufficient to justify the chancellor’s finding against the appellant Walter Heard and the appellant J. H. Moore, but only to the extent of $750.
In summary, we reverse the decree of the trial court insofar as it awarded the statutory penalty. The appellants Albert Heard and Janie Kelly Roberts are exonerated, and we reduce the judgment in favor of appellee to the sum of $750 as to the appellants Walter Heard and J. H. Moore only. The decree is modified accordingly and costs of court are taxed one-third each against Moore, Walter Heard, and appellee Boutwell.
Reversed in part and decree modified.
GILLESPIE, C. J., and PATTERSON, INZER, SMITH, SUGG and WALKER, JJ., concur.