Charles C. Medina, his wife Carrie S. Medina and Lake Crest Acres, Inc. appeal from a decree of the Chancery Court of Tishomingo County enjoining their use of that part of Cook Landing and Medina Roads, which lie on state property, for access to the Medina home. The State cross-appeals contending that it was entitled to damages. *Page 781 
Prior to 1936 D.P. Adams and wife owned a tract of land in Tishomingo County near Kreamer and Indian Creeks. A public road ran roughly parallel to Kreamer Creek on its north bank in an easterly direction to the present boat docks. It then ran northward paralleling the west bank of Indian Creek, now a part of Pickwick Lake, to Cook Landing. This road was called "Cook Landing Road."
In 1936 the Adamses conveyed 98 acres of their land to the Tennessee Valley Authority, hereinafter TVA. This conveyance, necessary to Pickwick Dam Reservoir, was "subject to the rights of a county road affecting 1.9 acres, more or less." At that time another road, now called Medina Road, ran northwesterly from a point on Cook Landing Road to Short Creek School. It was primarily used for public travel to the school and was maintained by the populace of the neighborhood.
On March 3, 1936, TVA and the State of Mississippi by its authorized representative, the Tishomingo County Board of Supervisors, signed an agreement that "certain county bridges and portions of certain county roads or highways in Tishomingo County, all lying below mean sea level elevation of 418 feet will be inundated and must therefore be taken for this public purpose . . ." The board of supervisors then resolved and placed into its minutes the following:
 Be it further resolved that the county bridges and portions of county roads and highways in Tishomingo County, located in the Pickwick Reservoir area, and lying below the mean sea level elevation of 418 feet, be and the same are hereby closed, abandoned and vacated as public bridges, roads and highways in the county of Tishomingo, State of Mississippi.
A map introduced at trial illustrates the 418-foot contour line traverses the public road west of the boat docks as well as crossing it several times northward on Cook Landing Road.
After the land was acquired by TVA, the residents moved from the area and the school was closed. Later the dam was constructed and a lake was formed flooding the land as expected in the area of Indian Creek, including those portions of the public roads below mean sea level elevation of 418 feet.
In 1958 TVA conveyed the property now known as J.P. Coleman State Park to the State of Mississippi. The roadways affected by this suit traverse these park lands.
Several years prior to this trial TVA sold timber in the area at which time Bill Robinson constructed a road west of the present boat docks where Cook Landing Road was flooded. This newly-constructed road as well as the old road west of the boat docks became known as the Bill Robinson Road.[1]
In 1964 the Medinas acquired two lots from Bill Robinson and moved a house trailer onto this land. They later purchased other land from Robinson and Adams, forming a single tract with about 1100 feet fronting the Bill Robinson Road. The Medinas used Cook Landing and Medina Roads in moving their mobile home to the site and afterward utilized a driveway previously constructed by Robinson for access to their home. This accessway to Bill Robinson Road later eroded and was abandoned. Thereafter the Medina and Cook Landing Roads were used for access until barricades were erected by court order on October 30, 1974.
At the request of the residents of the Kreamer Creek area, prior to the court order, the supervisor of the district agreed to improve Cook Landing Road north of the boat docks and to construct a school bus "turnaround." Freeman Bray was engaged for the improvements for which Medina was to contribute $2000 and the county $500. In the fall of 1973 the park superintendent discovered that Bray had cut numerous trees in widening an old roadway and directed him to cease his activities when he learned the park commission had not authorized the construction. It was estimated that ninety-three commercial trees had been felled and that it would cost approximately $2000 to restore the area to its previous condition. Additionally, there was uncontradicted testimony that Medina *Page 782 
had erected a fence extending from the northern boundary of his property over Cook Landing Road and had placed "No Trespassing" signs along this barrier.
The State in its bill of complaint sought, among other things, an injunction, restoration of the land and statutory and compensatory damages from the Medinas and Lake Crest Acres, Inc. It alleged the Medinas, owners of the land adjoining the state park, and Lake Crest Acres, Inc. the alleged lessee, were trespassing on park property in constructing a roadway nearly one-half mile in length and in so doing had brought equipment, erected fences, and destroyed trees and shrubs on state property. The court issued a temporary injunction in March 1973 and later inspected the property and directed that barricades be erected to protect the integrity of its injunction.
The cause was heard on its merits in March 1975. The evidence establishes that Cook Landing Road north of the boat docks had not been maintained by the county since 1936. It demonstrates also that Bill Robinson Road west of the docks had been maintained to a degree although the school had been closed and the inhabitants had moved away. It also evidences that the public had not been denied access to Cook Landing and Medina Roads although the roads had served only as occasional passageways for sportsmen and loggers. The court conducted a second inspection of the property and permanently enjoined the defendants from using the Medina and Cook Landing Roads as an accessway to their property. The State was denied a monetary award because the court found no visible evidence of damage.
The following is argued on appeal:
1. Cook Landing Road is a public road which has never been closed by the board of supervisors and remains a public road.
2. Medina Road is an access easement which has existed throughout the years and was retained when the land was conveyed to TVA and then to the State of Mississippi.
3. TVA did not acquire nor did it convey to the State of Mississippi the public roads or existing easements.
4. It is the public policy of Mississippi to lend its arm to landowners to gain ingress and egress where none exists.
Appellants first complain that Cook Landing Road is a public road and has never been closed by the board of supervisors. It was stipulated by the parties in the trial court that Cook Landing Road was at one time public and proof was presented as to its present status. However, the chancellor held that Cook Landing Road never became a public road. With this finding we must disagree.
It is settled that a public road may be created by prescription or by dedication, as well as by being laid out and established in accordance with statutory provisions, where the general public or several freeholders or householders of the county are interested in the road, and where public interest for convenience requires the road to be established. Coleman v. Shipp, 223 Miss. 516,78 So.2d 778 (1955); Armstrong v. Itawamba County, 195 Miss. 802,16 So.2d 752 (1944); Rylee v. State, 106 Miss. 123, 63 So. 342 (1913). Cook Landing Road has been used by the public since the days of the Indians. More recently residences were established adjacent to it and were served by a mail route, and the testimony of a former supervisor evidences that it was public during the time of his service from 1924 to 1932. Consequently, we conclude the public character of Cook Landing Road was clearly established.
In maintaining that Cook Landing Road was public and had not lost that character because it was never closed by the board of supervisors, the appellants cite Barrett v. Pilgrim,317 So.2d 382 (Miss. 1975), as authority for the propositions that (1) a court is without power to close a public road in private litigation unless predicated upon an order of the board of supervisors, (2) mere non-use of a road will not constitute an abandonment to deprive it of public character or justify its closing by a court in private litigation, and (3) Mississippi Code Annotated *Page 783 
section 65-7-7 (1972) prohibits the obstruction of any public road or highway.
The following appears in Barrett, supra, in which this Court declined to close a road:
 The Court is without power, however, to close a public road in private litigation between individuals unless such action is predicated upon a finding that there has been a valid order of the Board of Supervisors closing the road, spread upon its minutes, if it is a county road, or that similar official action has been taken by the Mississippi State Highway Commission and is reflected by its official records if it is a state road or highway.
 (317 So.2d at 383)
We note that Hatch v. Board of Supervisors, 56 Miss. 26 (1878), is the authority for our holding in Barrett. An examination ofHatch reveals it to be a suit concerning the meaning of an ambiguous order of a board of supervisors wherein the following language is used:
. . . and, until an unequivocal surrender by the Board of Supervisors of the right of the public to the road, the owner of the fee had no right to close it. (56 Miss. at 26)
Hatch does not hold that an order of the board of supervisors is the only means of unequivocally surrendering the public right to use a road. Admittedly, such an order would be an unequivocal and simple answer to the loss of public character. However, protracted non-use of a road by the public has the capability of ripening into an unequivocal surrender of its public character without a formal order of closure by a board of supervisors or the highway commission.
In Picayune Wood Products Co. v. Alexander Mfg. Co.,227 Miss. 593, 86 So.2d 480 (1956), a controversy between private litigants, we held:
. . . the appellant does contend that a road can be closed only by an order of the board of supervisors. . . . But under the authorities mentioned above a road may be abandoned by the county and the traveling public without an order of the board of supervisors; and the right which the county has in the roadway may be extinguished by abandonment and nonuser for the statutory period of ten years.
 (227 Miss. at 603, 86 So.2d at 483)
 * * * * * *
 . . . the trend of authority seems to be that mere nonuser for the period fixed by the statute of limitations for acquiring title by adverse possession affords a presumption, though not a conclusive one, of extinguishment, even in a case where no other circumstances indicating an intention to abandon appears; and if there has been in the meantime some act done by the owner of the land charged with the easement, inconsistent with or adverse to the right, a much stronger presumption of extinguishment will arise. . . .
 (227 Miss. at 604, 86 So.2d at 484)
The Court ultimately held the road in controversy was abandoned by non-use. And see Rawls v. Warren, 227 Miss. 299,85 So.2d 914 (1956), supporting the theory of abandonment although it was decided upon a finding of a private easement. We are of the opinion the statement in Barrett, supra, which requires an order of the board of supervisors to close a road is not in accord with our previous decisions, although under its facts the proper result was reached, and is not dispositive of the present issue. Moreover, Barrett concerned private litigation while this suit is by the State against an individual, further distinguishing it. A review of the cases concerning abandonment by non-use prompts the statement that better practice would require the board of supervisors or the highway department to be made a party to abandonment suits to protect the public right to the use of a roadway.
Cook Landing Road north of the present boat docks has unequivocally lost its public character in our opinion. It was abandoned by formal order of the board of supervisors below mean sea level of 418 feet. Those portions of the road above 418 feet sea level ceased to be maintained by *Page 784 
the board of supervisors and additionally, Medina admitted erecting a fence across the road north of Medina Road. These factors, closure and inundation of portions of the road, lack of maintenance for more than twenty years, and nonuser of the portions not inundated, constrain the conclusion of a clear intention to abandon. We think, therefore, the trial judge did not err in his finding that the road had lost its public character.
Appellants' second contention is that the Medina Road constitutes an access easement which has existed throughout the years and was retained when the land was conveyed to TVA and then to the State of Mississippi. It is well established that an easement may be created by grant, implication or prescription.Logan v. McGee, 320 So.2d 792 (Miss. 1975). There is no contention that an easement was created in the Medinas by grant and the record discloses insufficient evidence to establish an easement in them by prescription. In our opinion they are also precluded from an easement by implication.
In Bonelli v. Blakemore, 66 Miss. 136, 5 So. 228 (1888), we held that when a right for an easement over adjoining land exists and a conveyance is made, the easement passes, stating the principle, "If one sells to another a tract of land surrounded by other lands of the grantor, a right of way across such other land is a necessity to the enjoyment of the land granted, and is implied from the grant made; and to this extent are all the authorities." (66 Miss. at 142, 5 So. at 230) The case concludes, "Since the way claimed by complainants is not one of necessity, and is not of a continuous nature, it did not pass by the conveyance to Duff, Green Co., and of course has not been acquired by any of the subsequent conveyances under which the complainants derive title." (66 Miss. at 144, 5 So. at 231). The Medina land has 1100 feet frontage on the Bill Robinson Road thereby negating the theory that the Medina Road is a way of necessity. And since there was insufficient evidence to establish an easement in the Medinas' grantors or by them, there was no easement transferred by implication or by grant.
Lastly, appellants urge that the way was one of necessity, but as mentioned above, we are not persuaded. The early case ofPleas v. Thomas, 75 Miss. 495, 22 So. 820 (1897), correctly states the principle:
 It is well-settled law that one who sells a parcel of land to another, which is wholly surrounded by the other lands of the seller, impliedly grants a right of way to the interior lot so sold over the exterior lands retained. . . . And when one sells interior lands surrounded in part by the other lands of the seller and in part by the lands of strangers, the implied grant of a way to the interior land exists over the exterior lands of the seller.
 (75 Miss. at 500, 22 So. at 821)
However, this case, as well as that of Warwick v. Pearl RiverValley Water Supply District, 246 So.2d 525 (Miss. 1971), simply has no application because the Medinas' property is not landlocked as they have several hundred feet of frontage on the Bill Robinson Road and a means of ingress and egress. Wills v.Reid, 86 Miss. 446, 38 So. 793 (1905). It would seem also that Mississippi Code Annotated section 65-7-201 (1972), Private way established, would have direct application. We conclude that the appellants' assignments of error are without merit.
On cross-appeal the State contends the lower court erred in holding there was no proof that defendants were responsible for cutting the timber, clearing land, or erecting a fence on the state's land. It is of course familiar law that the statutory penalty for cutting trees is highly penal and must be applied with great caution. For its award the trespass must have been wilful, or the result of negligence so gross or the indifference so real or the lack of good faith so evident as to be the equivalent of willfulness. Moore v. Boutwell, 315 So.2d 921
(Miss. 1975), and Rutland v. Corley, 287 So.2d 433 (Miss. 1973). The present circumstances reveal, in our opinion, an honest *Page 785 
belief by the Medinas that they were improving a public road with the approval of the Supervisor of District One, thereby precluding the state's claim for the statutory penalties. However, the record does reveal, and the Medinas admit, that timber was cut and a roadway partly established for which the state is entitled to actual damages.
AFFIRMED ON DIRECT APPEAL. REVERSED AND REMANDED FOR ACTUAL DAMAGES ON CROSS APPEAL.
INZER and SMITH, P. JJ., ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
[EDITORS' NOTE: MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]
[1] Explanatory map attached. *Page 786