PICAYUNE WOOD PRODUCTS CO *v.* ALEXANDER MFG. CO.

No. 40082 April 9, 1956 86 So. 2d 480

*M. M. Roberts,* Hattiesburg; *Tate Thigpen,* Picayune, for appellant.

*Ray M. Stewart,* Picayune, for appellee.

KYLE, J.

The appellant, Picayune Wood Products Company, a corporation, filed its bill of complaint in the Chancery Court of Pearl River County against the appellee, Alexander Manufacturing Company, a corporation, seeking to reopen an old road, alleged to have been a public road, through a parcel of land owned and occupied by the appellee lying immediately south of the corporate limits of the Town of Picayune, and on which there was located a manufacturing plant owned and operated by the appellee. From a decree denying the relief prayed for and dismissing the bill of complaint, the appellant prosecutes this appeal.

The bill of complaint was filed on December 1, 1953. In its bill the complainant alleged that there was an old public road running southwardly from the Town of Picayune to Nicholson, which had been in use for more than 50 years; that in 1913 the road had been straighten-

ed out so as to cause the same to run immediately adjacent to and immediately west of the right of way of the New Orleans and Northeastern Railroad Company; and that the road had been established and maintained as a public road continuously thereafter. The complainant further alleged that the defendant claimed to be the owner of a parcel of land through which the road ran and which included a part of the old roadway, and that the defendant had erected fences, both at the north line and at the south line of its property, which obstructed the public road, making all traffic thereon impossible. The complainant alleged that the road had never been abandoned, and was still a public road by virtue of the use by the public over a period of more than 50 years; that the road had been recognized as a public road by the owners of the land now owned by Alexander Manufacturing Company prior to the time that company acquired title to the land, and that the road had been maintained and kept up by the county over a period of many years; and that the present route of the road had been maintained since 1913. The complainants further alleged that the defendant had refused to allow any person to travel on the road and had refused to permit property owners owning lands south of the defendant's manufacturing plant to have access to the road, and that the Board of Supervisors of Pearl River County had been unable to maintain the road because of the illegal and wrongful actions of the defendant; that the complainant owned and operated a manufacturing plant situated immediately south of the defendant's property, and that the complainant had no means of access to its property other than over the above mentioned road.

The complainant asked that the defendants be enjoined from continuing to obstruct the above mentioned road or interfering with the complainant's use of the road or interfering with the officers and employees of Pearl River County in the performance of their legal duty of

maintaining the road; and the complainant asks for actual damages in the sum of $25,000 and in addition thereto punitive damages in the sum of $5,000.

The defendant in its answer denies that there was an old public road running southwardly from Picayune along the west side of the railroad right of way, as alleged in the complainant's bill. The defendant admitted that such road had existed many years prior to the date of the filing of the bill of complaint. But the defendant averred that the road had been abandoned and had not been maintained by the board of supervisors, or recognized as a public road for a period of more than 30 years; and the defendant denied that the complainant was entitled to have the old road reopened, or to have the defendant provide means of ingress and agress to the complainant over and through the defendant's property; and the defendant denied that the complainant was entitled to have an injunction issued as prayed for in the bill of complaint.

The cause was heard by agreement of the parties before the chancellor in vacation. Thirteen witnesses testified for the complainant, and nine witnesses testified for the defendant.

At the conclusion of the testimony the chancellor found that the road described in the bill of complaint was never legally opened as a public road, and that the road never existed as a legal entity. The chancellor found that any rights of user that the public may have acquired over the route described in the bill of complaint had been lost by abandonment for a period in excess of ten years next preceding the filing of the bill of complaint. The chancellor found that the defendant had acquired its property in good faith and without knowledge of any claim of the existence of the roadway described in the bill of complaint; that the defendant had constructed its plant on its premises at great expense, and that these facts were known to the complainant at the time the com-

plainant erected its plant; that the complainant had established its plant at its present location with full knowledge of its problems of ingress and egress; and that the complainant was estopped from seeking ingress and egress over the defendant's premises.

The chancellor found that the old roadway had been changed from the west side of the New Orleans and Northeastern Railroad Company's railroad right of way to the east side of the railroad right of way about the year 1924, and that the old roadway had been in a state of abandonment and had not been used as a public road by the traveling public, and had not been maintained by the board of supervisors, since that time. The chancellor therefore denied the relief prayed for and dismissed the bill of complaint.

The first point argued by the appellant's attorneys as ground for reversal of the decree of the lower court is that the chancellor erred in concluding that the road had been abandoned for a period of more than ten years next preceding the date of the filing of the bill of complaint.

But we think there is ample evidence in the record to support the chancellor's finding that the old road had been abandoned for a period of more than ten years next preceding the date of the filing of the bill of complaint.

H. C. Moody, county engineer of Pearl River County, who had been associated with the county since 1922, and who had served as sheriff of the county from 1936 to 1940, testified that the Picayune-Nicholson road was originally located west of the New Orleans and Northeastern Railroad Company railroad right of way, but the road had been changed from the west side of the railroad to the east side of the railroad during the years 1921 and 1922, and that the old road had been abandoned after the new road had been completed; that the bridges and culverts rotted and were not replaced; and that many

fences had been erected across the old road right of way. John A. Grice, who had resided in the Town of Picayune since 1919, testified that the new road had been constructed on the east side of the railroad in 1922 and 1923, and the old road had been abandoned and had not been used since that time; that sometime during the 1930s a dummy line railroad was built across the old road right of way and no crossing was provided for the traveling public; that the old road had been impassable for a considerable period of time prior to the construction of the dummy line railroad.

Ira Bennett testified that he was 51 years of age and had lived in the vicinity of Nicholson during his entire lifetime; that he worked for the road contractors when the new road east of the railroad track was constructed; and that when the new road was finished the old road "was forgotten about." He stated that he made trips between Picayune and Nicholson, while he was in the wood and ice business between 1927 and 1937, and that he never saw anyone on the old road during that time. Ralph Stockstill testified that he had served two terms as a member of the board of supervisors from 1944 to 1952, and that the old road lying west of the railroad track was not a part of the county road system during that time, but was in a state of abandonment. He stated that he maintained a part of the road south of the Clem Pittman place (about 2-1/2 miles south of Picayune), but the road was not maintained north of the Clem Pittman place. Elmer Patch testified that he was 41 years of age and had grown up in the area between Picayune and Nicholson; that the road between the two towns had been changed from the west side of the railroad track to the east side of the railroad track about 1924, and that after the change was made the old road was abandoned. It was his observation that no one had traveled the old road since 1927 or 1928, and that the road was in such bad condition at that time that it could be used only for

horse-drawn vehicles. Patch stated, however, that the board of supervisors had reopened a part of the old road from the Henry Patch crossing southwardly many years before the date of the trial. It was shown by other witnesses that the part of the road referred to was reopened in 1939.

None of the complainant's witnesses claimed that the old road running southwardly from the Town of Picayune to the Clem Pittman place had been worked or maintained by the board of supervisors as a public road during the last 30 years. Several of the complainant's witnesses testified, however, that the old road had been used to some extent until only a few years before the date of the trial. But J. E. Mitchell, president of the complainant corporation, admitted that W. A. Alexander had a fence across the old road right of way at the time the complainant purchased its lot from Mrs. Mamie Moseley, and that the parties who organized the complainant corporation knew that there was no road whereby access to its premises could be had when they purchased the lot. J. D. Thigpen testified that he had used the old road before the new highway was constructed on the east side of the railroad track. He was asked whether he knew when the public quit traveling the old road. His answer was, ''not exactly, but people would come through there until all the bridges rotted out to where they couldn't travel it with horses and wagons.'' He thought that some wagon use was made of the road until W. A. Alexander built his fence in 1945. G. H. Williams, a former owner of the lands on which the complainant's plant and the defendant's plant were located, testified that the old road was used by the public at the time he sold the land to W. A. Alexander in 1943. But Williams admitted that the board of supervisors had not maintained the road since the new road was opened in the early twenties. W. A. Alexander testified that he had fenced in the greater part of the old road in question during

the year 1945. S. G. Thigpen, a stockholder of the com-plainant corporation, testified that the old road was used until W. A. Alexander built his fence in 1945. He admitted, however, that the traffic had shifted to the new road about 1923 or 1924, and that the old road had not been maintained by the county since that time, and that there were no houses south of the city limits to be served by the old road when he inspected the land in 1943.

The appellant's attorneys in their brief attack the chancellor's finding that the old road had been abandon-ed for a period of more than ten years upon two grounds: (1) That it was not shown that the board of supervisors had adopted an order and entered it upon its minutes showing that the old road had been abandoned as a pub-lic road; and (2) that there was positive proof in the record to show that some use had been made of the road up until 1945.

But we think that neither of those contentions can be sustained under the facts disclosed by the record for the following reasons:

 (1) Public rights, such as the easement of pas-sage which the public has in respect of a highway, may be abandoned; and such abandonment may be shown by evidence in pais as well as by the public records. 39 C.J.S., p. 1066, Highways, par. 130; and (2) there was a conflict in the testimony as to the date the old road-way ceased to be used as a public road, and the chancel-lor's finding on that point, we think is supported by the weight of the evidence, and cannot be disturbed by us on appeal.

In the case of Berry v. Board of Supervisors of Jef-ferson Davis County, 156 Miss. 629, 126 So. 405, this Court held that the board of supervisors have the power to discontinue a public road. See also Noxubee County v. Long et al., 141 Miss. 72, 106 So. 83. In the very recent case of I. C. Rawls v. W. F. Warren, No. 39,959, decision rendered March 19, 1956, this Court again recog-

nized the principle of law stated above, that public rights such as the easement of passage which the public has in respect of the highway may be lost by abandonment. In its opinion in that case the Court said: ''We have already said the proof fully sustained the chancellor in his finding that this barn road had been abandoned and relinquished as a public highway in 1921. It had ceased to be a public highway, or a public highway right of way, some twenty-five years before said deeds were executed; * * *.''

The appellant does not contend that the board of supervisors had worked or maintained the old road as a public road at any time during the last thirty years. But the appellant does contend that a road can be closed only by an order of the board of supervisors. It may be true that a county road can be closed only by an order of the board of supervisors. But under the authorities mentioned above a road may be abandoned by the county and the traveling public without an order of the board of supervisors; and the right which the county has in the roadway may be extinguished by abandonment and nonuser for the statutory period of ten years.

 ██ The county and the public had acquired no rights in the old roadway involved in this controversy except an easement for road purposes. Whitworth v. Miss. Highway Commission, 203 Miss. 94, 33 So. 2d 612, and after the road had been abandoned by the county and had ceased to be used as a public road for the statutory period, the old right of way was no longer subject to the easement for road purposes.

The principles announced by our own Court in the cases cited above, that the right of the public to the use of a public highway may be lost by abandonment, find ample support in the following statement of the text-writer in 39 C.J.S. pp. 1065, 1066, Highways, par. 130.

"While 'once a highway always a highway' is an ancient maxim of the common law, nevertheless, as far as the public is concerned, the right to a public highway may be lost by abandonment, subject only to the limitation that the abandonment shall not injure vested rights. To effect an abandonment there must be an intention to abandon.

"It is presumed that a highway, once shown to exist, continues to exist. Abandonment is a fact which must be proved and the burden is on the one who asserts abandonment to prove it by clear and satisfactory evidence. Abandonment may be shown by evidence of matters in pais, as well as by proceedings in court, or other public records. * * *." 39 C.J.S., pp. 1065, 1066, Highways, par. 130.

There is a diversity of opinion among the courts as to the effect of mere nonuser of a highway on the right of the public to use it as such. But the trend of authority seems to be that mere nonuser for the period fixed by the statute of limitations for acquiring title by adverse possession affords a presumption, though not a conclusive one, of extinguishment, even in a case where no other circumstance indicating an intention to abandon appears; and if there has been in the meantime some act done by the owner of the land charged with the easement, inconsistent with or adverse to the right, a much stronger presumption of extinguishment will arise. 25 Am. Jur., p. 401, Highways, par. 112.

The proof in this case shows not merely a nonuser of the old road, but an abandonment of the road by the county. The board of supervisors ceased to maintain the road as a public road after the completion of the new road on the east side of the railroad right of way in 1924. The culverts along the old roadway rotted and were not replaced, and the road in time became impassable. The dummy line railroad was constructed across the road right of way and no crossing was provided for

users of the road. Fences were erected across the road right of way. It is true that the proof does not show that all of these fences had been erected more than ten years before the date of the filing of the complainant's bill, but proof of the erection of the fences constitutes convincing evidence of the fact that the road had already ceased to be used by the traveling public at the time the fences were erected. The chancellor found that the road had ceased to be used as a public road after the new highway on the east side of the railroad had been completed, and that any rights of user that had accrued in favor of the public had been lost by abandonment.

It is true that some of the complainant's witnesses testified that the old road was still traveled to some extent until 1945; but this testimony was contradicted by the testimony of other witnesses, and the chancellor found that the road had ceased to be used as a public road long before 1945. We think there was ample evidence in the record to support the chancellor's finding.

■ ■ Finally the appellants argued that the court erred in refusing to permit the witness W. A. Alexander to testify concerning a conversation he had with Paul Garner, president of the appellee corporation, with reference to the use of the old road by the appellant. But there was no error in the court's refusal to admit testimony which was intended to prove an oral agreement by the appellee to make available to the appellant a private roadway across its property.

■ ■ It is also argued that the court erred in permitting witnesses to testify concerning that part of the old road south of the Henry Patch crossing. But we think there was no error in the admission of the testimony complained of, and even if the testimony were held to be incompetent the admission of such testimony would not constitute sufficient grounds for a reversal of the decree of the chancellor. Complaint is also made of the

admission of other items of testimony, but it is not necessary that we discuss those items of testimony in detail.

There is no error in the record that requires a reversal of the decree of the lower court, and that decree is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.