WILLIAM A. ANDERSON, PONDEROSA RANCH, AND
PONDEROSA RANCH, INC., APPELLANTS, v. PAUL A.
RICHARDS, RESPONDENT.

No. 10025

March 28, 1980                                             608 P.2d 1096

*Laxalt & Berry,* Carson City, for Appellants.

*Paul A. Richards,* Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

Immediately prior to April 9, 1970, appellants placed gates and obstructions across Tunnel Creek Road, the roadway which had been the customary access to the respondent's property. On April 9, 1970, respondent Paul A. Richards filed suit seeking the removal of the obstructions and alleging that he should have a right-of-way across appellants' property using that roadway.

On May 20, 1970, the district court denied Richards' request for a preliminary injunction and the case was tried, without a jury, on May 10, 1971. Additional evidence was taken on March 31, 1972. Judgment for respondent was entered on September 27, 1976, and appellants' motion for a new trial was denied on July 19, 1977. This appeal followed.

Tunnel Creek Road is a dirt road which begins at Nevada State Highway 28 near Incline Village, Nevada, runs south paralleling that state highway for approximately one mile, then turns due east. Richards claims that the other terminus of the road exits in Washoe Valley, Nevada, near the Cliff Ranch. Appellants own the land adjacent to, and directly north of, the Richards' property. Richards uses the Tunnel Creek Road across appellants' land for ingress to and egress from his property.

The district judge found that the road, which has been in existence since "at least" 1880,[1] was originally constructed over public domain[2] and is a public road from Richards' south

[1]The district court found that Tunnel Creek Road had been in existence since at least 1880 and had been ". . . used consistently, continuously, under a claim of right to use the land as a highway to the exclusion of any individual right of the owner inconsistent therewith, by the public without permission for at least the statutory period" and that the road had been used "for personal, governmental, recreational and business" purposes; including access to the Rocky Point Subdivision.

[2]Richards' exhibit "R", Patent No. 24 from the United States to the C. P. Railroad Co., executed the 5th day of December, 1876, by the President, U. S. Grant, by D. D. Cone, Secretary, S. W. Clark, Recorder of the General Land Office, recorded in Volume 6, pages 225 to 261, inclusive, recorded at the request of D. H. Haskell, filed February 8, A. D. 1878, John B. Williams,

property line to Nevada State Highway 28. He based his decision upon the ground that Richards and his predecessors in interest had adversely and continuously used the road, without the permission of appellants or their predecessors in interest, for more than the prescriptive period. He concluded that any obstructions prior to the time appellants blocked the road were for fire protection in accordance with NRS 475.210.[3] The trial court made no finding on the status of that portion of Tunnel Creek Road beyond Richards' property to the south and east, because that issue was not directly before it.

During the course of the trial, numerous witnesses testified. Although there was conflict in their testimony regarding the extent of the use made of the roadway in controversy, nearly every map introduced by the parties showed a roadway from Nevada State Highway 28 to the south boundary of Richards' property and beyond.

The record leaves no doubt that there existed a road or trail from early pioneer days, first known as "the trail to Carson"[4] or the "49er route", and later as "Tunnel Creek Road", which followed the general course here in dispute and had its western terminus at what is now Nevada State Highway 28.

The contention of Richards and the finding of the district court is that at least the part of the road leading to the south boundary of respondent's property has always remained open and has been used continuously by Richards and his predecessors in interest, as well as by the public. Appellants contend that the Tunnel Creek Road was never in fact a public highway and the use of the part of it here in issue, whatever the extent of that use, was permissive only.

---

Court Recorder, and certified on the 15th day of May, 1970, Ardis Brown, County Recorder, Washoe County, Nevada, by Allan C. Johnson, Deputy, indicates the beginning of private ownership of some of the lands traversed by the Tunnel Creek Road.

[3]NRS 475.210:

1. Whenever the governor finds that conditions of extreme fire hazard exist, either in or out of the fire hazard season, he may by proclamation close or partially close such land or areas as he may find to be in such condition of extreme hazard to the general public and prohibit or limit burning and other acts thereon to such degree and in such ways as he deems necessary to reduce the danger of forest and other wildland fires.

2. The governor shall declare the end of any such emergency only upon a finding that the conditions of extreme fire hazard no longer exist.

[4]The early maps in evidence referred to the entire roadway along the northern shore of Lake Tahoe (Lake Bigler) as a "trail" and to that portion of the roadway from what is now Nevada State Highway 28 to the southern edge of Richards' property and beyond as the "trail to Carson". It was not unusual in that era to refer to roadways as trails. As an example, "Oregon Trail, an emigrant route to the Oregon Country . . ." Webster's New International Dictionary, 1718 (2nd ed. unabridged 1961).

The contention that Tunnel Creek Road is a public road is confirmed in the record by evidentiary material[5] and is supported by statutory provisions.

43 U.S.C. § 932 reads as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." This statute was section 8 of the Act of July 26, 1866, 14 Stat. 251, R.S. § 2477 (Repealed. Pub. L. No. 94–579, Title VII, § 706(a), Oct. 21, 1976, 90 Stat. 2793).[6] The historical conditions leading to its enactment and the circumstances of its operation are set out and explained in Central Pacific Railway v. Alameda Co., 284 U.S. 463 (1932). The statute was apparently passed to protect persons who had already encroached upon the public domain without authorization, but who had been allowed to remain there with the knowledge and acquiescence of the government and, thus, should not be deemed to be trespassers. It was intended to give legitimacy to an existing status which might otherwise be indefensible. Justice Sutherland, speaking for the Court in the *Central Pacific* case, pointed out that the statute "is controlled by the same general principles" as those embraced in companion section 9 of the same Act, which relates to ditches and canals on the public domain. In declaring those "principles", he quoted the following from Broder v. Water Company, 101 U.S. 274, (1879):

> "It is the established doctrine of this court that rights of . . . persons who had constructed canals and ditches . . . are rights which the government had, by its conduct, recognized and encouraged and was bound to protect before the passage of the Act of 1866." We are of the opinion "that the section of the Act which we have quoted was

---

[5](a) Plaintiff's (respondent) exhibit "N", DeGroot's Map of Nevada Territory, published by Warren Holt, 305 Montgomery Street, San Francisco, California, and entered according to an Act of Congress in the year 1862 by Warren Holt in the Clerk's Office of the District Court of the United States for the Northern District of California; (b) Plaintiff's (respondent) exhibit "H", a map dated April 19, 1866, approved and examined by the U.S. Surveyor General's Office, San Francisco, California, with indication that the surveys were made from 1861 through August 29, 1865; and (c) Defendants' (appellants) exhibit "13", a Map of Township No. 16 North; Range No. 18 East of Mount Diablo Meridian, filed June 14, 1867, certified to be a correct copy on Sept. 21, 1867, with indications thereon that the survey was made in the year 1865, all support the finding that Tunnel Creek Road was in existence by "at least" 1880 and that it was in fact in existence before March 9, 1866, and July 26, 1866.

[6]Section 701(a) Public Law 94–579 provided that "Nothing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid . . . right-of-way, or other land use right or authorization existing on the date of approval of this act [Oct. 21, 1976]".

rather a voluntary *recognition of a preexisting right of possession,* constituting a valid claim to its continued use, than the establishment of a new one." (284 U.S. at 469–470).

In considering that Congressional enactment, the Colorado Supreme Court said:

The sum of our holding is that the statute [43 U.S.C. § 932] is an express dedication of a right of way for roads over unappropriated government lands, acceptance of which by the public results from "use by those for whom it was necessary or convenient." It is not required that "work" shall be done on such a road, or that public authorities shall take action in the premises. User is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices. "A road may be a highway though it reaches but one property owner."

Brown v. Jolley, 387 P.2d 278 (Colo. 1963).

In 1866 the Nevada legislature enacted legislation which is now NRS 403.410[7] establishing public roads. The evidence in this record indicates that the emigrant trail which is now known as Tunnel Creek Road was in existence prior to March 9, 1866, and was authorized and recognized by the laws of the United States and declared to be a public road by legislation of the State of Nevada.

There appears to be a spurious inference of abandonment running throughout appellants' argument, in spite of the evidence that Tunnel Creek Road has been continuously used by members of the public for more than a century. There is no evidence to support any theory of abandonment of that portion of the road under consideration in this appeal.

The party asserting abandonment of a public road must carry the burden by clear and cogent proof. Connell v. Baker, 458 S.W.2d 573 (Mo.App. 1970); McEneny v. Gerlach, 142

[7]NRS 403.410:

1. All public roads and the streets and alleys in incorporated cities and towns in this state, used or lawfully entitled to be used as such on March 9, 1866, and all such roads, streets and alleys as the board of county commissioners of the county in which they are situated shall thereafter lawfully cause to be opened, are declared to be public highways.

2. Nothing in this section shall be deemed or construed to injure or abridge the rights of any toll road; but all roads shall be entitled to all the protection and benefits arising from this section.

S.W.2d 1095 (Mo.App. 1940). The fact that travel on the now disputed roadway may have decreased over the years does not work an abandonment or affect its status as a public road. Whether a road is public or private is determined by the extent of the right to use it, and not by the extent to which that right is exercised or by the quantity of travel over it. 458 S.W.2d at 577.

No authority has been cited by appellants that would support a contention that a public road may be deemed abandoned because of use by only a few members of the public or because of a substantial reduction in the number of the members of the public who continue to make use of the rights previously acquired. *See* Smith v. Bixby, 242 N.W.2d 115 (Neb. 1976).

Obstruction of a public road is unlawful (NRS 405.230(1))[8] and cannot aid appellants' position. An unlawful encroachment placed upon a public roadway will not constitute an abandonment of the public easement and cannot divest the public of its right to traverse. King v. Corsini, 335 N.E.2d 561 (Ill.App. 1975); State v. Smith, 241 S.W.2d 844 (Tenn.App. 1950).

Appellants further contend that the trial court committed reversible error when it took the matter under advisement for a very long period of time without entering a judgment. Although the delay was inordinate and is to be discouraged, the pertinent evidence to support the judgment of the trial court as well as this opinion is a matter of public record and not dependent upon memories that may be dimmed by the passage of time; therefore, appellants were not detrimentally prejudiced by the alleged delay.

Judgment of the district court is affirmed.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

[8]NRS 405.230:

1. Any person or persons who shall, in any manner, obstruct any road, street or alley, or in any manner injure the same, or prevent travel thereon, or who shall obstruct, dam or divert any stream or water so as to throw the same, or cause the flowage thereof, upon, across or along the pathway of any road, highway, street or alley shall be guilty of a public offense, as prescribed in NRS 193.155, proportionate to the extent of damage to the section of the road, street, alley or highway damaged and in no event less than a misdemeanor.