526 So.2d 541 (1988)
Amanda McNEELY and Betty Polk
v.
Mary C. JACKS, Paul Jacks and Edgar Jacks.
No. 57754.
Supreme Court of Mississippi.
June 3, 1988.
*542 K. Maxwell Graves, W.W. Hewitt, Meadville, for appellants.
W.H. McGehee, McGehee, McGehee & Torrey, Meadville, for appellees.
Before HAWKINS, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's is a song of a not so open road. It lies in rural Franklin County north of Meadville. It has no name. People once used it to travel to and from Union Church Road on the east and Oak Grove Road on the west. Everyone agrees the way was once in law a public road, though it was never formally so dedicated. The road was worked by the county as recently as 1972 or 1973.
The Court below held that the road had been abandoned and had become a private way. The correctness of that ruling is the matter for decision on appeal. We reverse.

II.

A.
The present chapter in the road's story begins in 1965. In that year Edgar Paul Jacks and Mary Jacks and their son, Edgar, acquired and moved onto lands through which most of the eastern half of the disputed road runs. See Map attached as Appendix. At that time the Fells family owned adjoining lands to the west. Years earlier the road had ceased being a thoroughfare all the way to Oak Grove Road, stopping instead somewhere near the Fells' home which was near the western end of the road. The Jacks argue that the road had become nothing but a driveway to the Fells' home.
The Plaintiffs below  and Appellants here  are Amanda Anne Hewitt McNeely and Betty Wilhemina Hewitt Polk. They did not appear on the stage until 1980. Their father and representative is W.W. Hewitt, a Meadville attorney, who wears many hats, and is sufficiently prominent in this case about a road that we refer to Plaintiffs as the Hewitts.
*543 Back in the spring of 1973, the last member of the Fells family moved off the old Fells place, now the Hewitts' property. Percy Fells, who lives in Lincoln County, said he asked Paul Jacks "to watch it for us and try to help us." Jacks put a gate at the east entrance of the gravel road, where it met the Union Church public paved road. See Point 1 on the map. Jacks said he wanted to control his livestock.
In 1974, Jacks leased the Fells' land, now owned by the Hewitts, and used it as pasture land. He fenced in the entire property, and put a gap across the road at Fells' west boundary line, Point 3. Around 1978, Jacks removed the gate at the Union Church Road and placed a gap to the east of the Price home, Point 2, well east of the Fells property.
In 1980, W.W. Hewitt arranged the purchase of the 160-acre Fells tract and took title in the name of his two daughters. The elder Hewitt placed two iron gates on the by now not so open road, one at Point 2 and one at Point 3, replacing the wire gaps the Jacks had installed. Hewitt, Sr., tells of various things he has done with the land since 1980. Besides hunting on the property, Hewitt had 68,000 pine saplings set out. Firewood had been hauled off the property via the gravel road.
Jacks continued to use his land to graze cattle. He installed the wire gap to control his cattle. He was also concerned with "pilfers" getting in and "with dogs killing cows". Hewitt's explanation of why he installed the gate is
I got tired of fooling with that barbed wire gap and I took the gate up there `cause I wanted to try to get along with him.
Hewitt acquiesced first in the gap and then the gate being kept locked, so long as he had a key. This allowed Jacks to control his cattle but did not cause Hewitt inconvenience in use of the road or access to his property.
The Jacks do not dispute the various post-1973 uses of the road. They insist, however, that all persons using the road were the Hewitts, their predecessors in title, the Fells, and various agents, invited guests and/or contractors, as though the point had power. Paul Jacks denied any members of the general traveling public have used the road since 1973. "If they did, they went in without my knowledge." The Jacks make no claim they ever turned anyone away. At various times persons approached and asked for the key to the wire gap and later gate. The Jacks always gave it to them. Indeed, the record is devoid of direct evidence of any individual who ever sought use of the road and was denied.
In 1983 the Jacks precipitated the present suit by completing fencing off the road along their western boundary. See Point 3. They removed the gate. For the first time the Hewitts were barred from their property. More importantly, for the first time there was an unhinged barrier across the road. Point 3, it will be recalled, is that point on the road where the Jacks property joins the Hewitt property.

B.
On July 19, 1985, the two Hewitt daughters brought suit in the Chancery Court of Franklin County, Mississippi. The Jacks were named Defendants.[1] At the conclusion of the trial held May 20, 1986, the Court announced that it was
of the opinion that the evidence shows that it was a public road, so used and recognized in the community, worked by the supervisors for many years.
The Court then stated
That being the case, has that public road been abandoned? And that's a legal question.
*544 The Court then took the matter under advisement and on July 28, 1986, announced its opinion that the public road had indeed been abandoned and dismissed the Hewitts' daughters' complaint.[2] This appeal has followed.

III.
The Franklin County Board of Supervisors has taken no formal action closing the road with no name. Still, our law recognizes what is in effect a common law abandonment much like unto the way the road became public in the first place. See Picayune Wood Products Co. v. Alexander Manufacturing Co., 227 Miss. 593, 86 So.2d 480, 483 (1956). That law has taken its cue from adverse possession. As all know, adverse possession requires proof of actual possession by a non-record title holder which is open; notorious and visible; hostile; under claim of ownership; exclusive; peaceful; and continuous and uninterrupted for a period of ten years. See, e.g., Roy v. Kayser, 501 So.2d 1110, 1111 (Miss. 1987).
The traveling public is placed in the position of the record title holder in an adverse possession case. If the public's exclusion from a public road is so complete and continuous that, were adverse possession being claimed against a record title holder the claim would be honored, our law decrees abandonment. See Medina v. State ex rel. Summer, 354 So.2d 779, 783 (Miss. 1977); Picayune Wood Products Co. v. Alexander Manufacturing Co., 227 Miss. 593, 604, 86 So.2d 480, 484 (1956).
On the other hand, Barrett v. Pilgrim, 317 So.2d 382 (Miss. 1975) recognized that mere use of a public road as a "lovers" lane, whiskey cache or as a place for dumping garbage, was not such an abandonment as to deprive it of its public character or justify its closing by a court in private litigation between individuals. 317 So.2d at 383.
But what of the wire gaps and gates installed first by Jacks and then by Hewitt? We have no cases directly on point but find valuable expressions in other jurisdictions. A road will not be deemed abandoned by an attempted obstruction where use is continued. Fenley Farms, Inc. v. Clark, 404 N.E.2d 1164, 1170 (Ind. App. 1980). Nevada and Tennessee courts have stated that an unlawful encroachment placed on a public roadway will not constitute abandonment. Anderson v. Richards, 96 Nev. 318, 608 P.2d 1096, 1099 (1980); State v. Smith, 34 Tenn. App. 608, 241 S.W.2d 844 (1950). The Anderson court went on to state that a public road is not abandoned when it is used by only a few members of the public or because of a substantial reduction in the members of the public who continue to make use of rights previously acquired. Nor does the fact that public authorities have ceased to maintain the road change its status. Anderson, 608 P.2d at 1099.
The Jacks placed the wire gaps across the road to control their livestock. Where a gate or gap has been placed across the road to control livestock, it does not "cause a road to lose its character as a public way, when it was evident that by placing such obstacle there was no interruption of the way by those traveling it." Smith v. Smith, 482 So.2d 1172, 1175 (Ala. 1985); Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289, 294 (1972).
Two factors convince us that the road had not been abandoned in law for ten continuous years preceding the filing of this suit in 1985. First, having in mind that the Jacks' domination of the road must have been as complete as would be required to acquire the road by adverse possession, the record reflects sporadic use by others. In 1976, Percy Fells sold timber off the property he then owned and used the road. The timber was hauled out on this road. The Southwest Mississippi Electric Power Association has used this road *545 in maintaining its power lines. W.W. Hewitt and his two sons-in-law, E.B. McNeely and Brooks Polk, have used the road for various purposes since 1980, including hunting. The Hewitts had a reforestation program for setting out pine saplings on their property in 1982, and, in that connection, persons affiliated with the State Forestry Commission and Davis Forestry Corp. used the road.
If a public road runs through the property of one and deadends on the property of another, and for ten years the latter (and persons acting on his behalf and with his permission) are the only ones to use the road, no abandonment occurs. It is not necessary that interlopers or sightseers or persons without any ownership interest or business on the latter's property use the road, for the owner of the land on whose property the road deadends is as much as any other a member of the general public, as able in law to interrupt the period of prescription. The point for the moment is that we are without evidence of nonuse sufficient in law to generate any presumption of abandonment. See Picayune Wood Products Co. v. Alexander Manufacturing Co., 227 Miss. 593, 86 So.2d 480, 484 (1956).
The Jacks' emphasis that only the Hewitts and those in privity with them have used the road fails for another reason. Again we employ the analogy of adverse possession law, albeit inversely. A claim of adverse possession fails where the would-be adverse possessor permits the record title holder to use the property whenever the latter sees fit. Cf. Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 117 (Miss. 1987); Johnson v. Black, 469 So.2d 88, 91 (Miss. 1985). The Jacks never denied the Hewitts, and their predecessors in title, the Fells, use of the road, nor is there identified in the record any other individual denied its use.
The Jacks make much of the fact that Hewitt put a gate in at Point 3. The Court below relied in part on this fact as "contradict[ing] their allegation that the road is public." The facts suggest only that Hewitt was willing to cooperate with Jacks in controlling the latter's cattle. Even if we assume the Hewitts were content to discourage the general public's use of the road, the Jacks profit nothing. Indeed, we appear to have a consensual "solomonic" arrangement not unlike that Barrett v. Pilgrim held insufficient to close a public road.
The Chancery Court erred as a matter of law when it held that the road in question had been abandoned. We hold that the road is and at all times reflected in this record has been a public road. The judgment below is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
*546 
NOTES
[1] We have wondered that the Franklin County Board of Supervisors have not been made parties to this action. The quick answer is that no one moved to dismiss for failure to join. See Rules 12(b)(7) and 19, Miss.R.Civ.P. We have oft adjudged whether a road be public in the absence of the governing authority responsible for upkeep. See Barrett v. Pilgrim, 317 So.2d 382 (Miss. 1975); Picayune Wood Products Co. v. Alexander Manufacturing Co., 227 Miss. 593, 86 So.2d 480 (1956).
[2] At various points in these proceedings the Hewitts complain that, if the judgment below stands, their property is landlocked and they are denied access. At trial, the Hewitts proceeded solely on the theory that the road was a public road and had never been abandoned. They made no claim to a right-of-way by prescription, easement or way of necessity. On appeal and even at oral argument the Hewitts have repeated this position.