# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00217-SCT

*JOHN T. SEYFARTH, JR.*

*v.*

*ADAMS COUNTY BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2018 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | PAUL ANDERSON KOERBER |
| | SCOTT FLETCHER SLOVER |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PAUL ANDERSON KOERBER |
| ATTORNEY FOR APPELLEE: | SCOTT FLETCHER SLOVER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 04/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Adams County Board of Supervisors (Board) designated Mount Airy Plantation Road as a public road, placing it on the official county road register in 2000. John Seyfarth petitioned the Board to abandon the portion of the road that dead ends into his property. He alleged that people were using the road to reach his property and trespass on it. The Board declined to abandon the road, denied Seyfarth's request for damages, and did not address his requests that the Board take action to abate the nuisances he experienced. Seyfarth appealed

to the circuit court, which affirmed the Board's decisions not to abandon the road and not to award damages. But the circuit court ordered the Board to reasonably abate any nuisances to Seyfarth. Seyfarth appeals the circuit court's ruling to affirm the Board's decision not to abandon the road and not to award damages, and the Board cross-appeals the order that it abate any nuisances. Because Seyfarth has no remedy on the record before this Court, this Court affirms the circuit court's judgment affirming the Board's decisions declining to abandon the road and declining to award damages. But because, on this record, the Board has no legal authority to abate any nuisance in the manners suggested, this Court reverses and renders the circuit court's order mandating that the Board abate any nuisance.

## FACTS AND PROCEDURAL HISTORY

¶2. In 1998, the Legislature passed a law that required each county board of supervisors to prepare and adopt an official map designating all public roads on the county road system on or before July 1, 2000. Miss. Code Ann. § 65-7-4 (Rev. 2012). The Legislature's stated intent was that the official record "shall include all public roads that the board of supervisors determines, consistent with fact, as of July 1, 2000, or such date the initial official record is adopted, are laid out and open according to law." Miss. Code Ann. § 65-7-4(6) (Rev. 2012). The Legislature further explained that the legislative intent for the proceedings and public hearing for the initial adoption of the roads

> are not intended to lay out, open, designate or otherwise establish new public roads, but to document and record existing roads which are, at the time of the initial adoption of said map and register, adjudicated by the board, consistent with fact, to be public roads by dedication, under the methods provided by statute, or by prescription and required by public convenience and necessity.

2

Miss. Code Ann. § 65-7-4.1 (Rev. 2012). On May 8, 2000, the Adams County Board of Supervisors published notice that a hearing would occur on June 5, 2000, regarding the official county road system registry, as required by statute. *See* Miss. Code Ann. § 65-7-4(3) (Rev. 2012). The road registry designated which county roads were public and which were private. The hearing occurred on June 5, 2000, and the Board approved the designations on June 19, 2000. Mount Airy Plantation Road, a road .58 miles long, was included as a public road on the designation.

¶3. Mount Airy Plantation Road dead ends into property owned by Seyfarth. The portion that traverses Seyfarth's land provides access to only one other property, and that property has a deeded perpetual easement and right-of-way over the portion of the road that must be used to access it. Seyfarth alleged that the public's use of the portion of the road that dead ends onto his property has created a nuisance. Deer guts were being dumped on his property, hunters have trespassed and even constructed deer stands on Seyfarth's property, and his cattle have been shot and injured.

¶4. In March 2014, Seyfarth twice approached the Board and asked that a portion of Mount Airy Plantation Road be removed from the county road system. Also in March 2014, several residents and landowners along Mount Airy Plantation Road signed a petition asking the Board to keep the road public.[1] On July 18, 2016, Seyfarth appeared before the Board and requested that the Board abandon the portion of Mount Airy Plantation Road that

---

[1]Only one of those landowners needs the portion of Mount Airy Plantation Road that is contained within Seyfarth's property to access his property, and an easement for access exists.

encroaches on his property, declare a variance restricting public use of the portion of the road, take action to abate the nuisances to Seyfarth's property caused by the road, and/or provide just compensation to Seyfarth for the encroachment on his property. There was testimony that the road had been maintained by the general public since the 1980s. Moreover, the other landowner using the road objected to its abandonment. The Board declined to abandon the portion of the road at issue, and it found that Seyfarth's request for damages was untimely. Seyfarth filed a Petition for Bill of Exceptions and Other Relief in the Adams County Circuit Court, appealing the Board's decision. The circuit court affirmed the Board's decisions not to abandon the portion of the road and not to award damages. However, the circuit court noted that the Board did not address Seyfarth's nuisance concerns and ordered "that the county be required to maintain the road in a reasonable manner so as to reasonably abate any nuisance caused by public use of the road, specifically including those cited and complained of by the Plaintiff."

¶5.     Seyfarth appeals, arguing that 1) the court erred in affirming the Board's decision not to abandon the road because no substantial evidence exists that the road is a "public road" and the Board should thus abandon the road, and 2) the Board's decision was arbitrary and capricious. Seyfarth asks this Court to 1) reverse and remand the Board's decision; 2) declare that the road was improperly and without legal notice designated a public road; 3) compel the Board to abandon the road; 4) compel the Board to declare a variance from use of the road, including restricting use from the general public and installing a gate at the point of access to Seyfarth's property, and to take action to prevent the nuisances, including

4

stationing law enforcement continuously at the access point; and 5) order the board to provide just compensation to Seyfarth. The Board cross-appeals, arguing that the court's order to abate the nuisance was beyond the circuit court's authority.

## ANALYSIS

### 1. Standard of Review

¶6. This Court does not disturb the decision of a board of supervisors unless the decision was not supported by substantial evidence, was arbitrary or capricious, was beyond the board's scope or powers, or violated the constitutional or statutory rights of the aggrieved party. *Hooks v. George Cty.*, 748 So. 2d 678, 680 (Miss. 1999). Substantial evidence is more than a mere scintilla of evidence. *Id.* Additionally, because the Mississippi Constitution gives boards of supervisors "full jurisdiction" over roads, this Court gives substantial deference to board decisions regarding roads in which the board has discretion. *See Covington Cty. v. Collins*, 92 Miss. 330, 45 So. 854, 855 (1908).

### 2. Law Regarding County Roads

¶7. The Mississippi Constitution places authority over county roads with the county board of supervisors. Miss. Const. art. 6, § 170. It provides that "[t]he board of supervisors [of each county] shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe." *Id.* The Legislature reaffirmed this jurisdiction, providing that "[t]he board of supervisors of each county shall have full jurisdiction over all matters relating to the public roads of the county, including the establishment, laying out, opening, abandonment, altering, changing, working and

5

maintaining of such roads . . . ." Miss. Code Ann. § 65-7-1(1) (Rev. 2012).  The Legislature

also mandated that "[a]ll public roads shall be kept open . . . ."  Miss. Code Ann. § 65-7-3

(Rev. 2012).  The Legislature provides only limited exceptions to its mandate to keep all

roads open: 1) the board may regulate the kinds of wheels that may be used on public roads,

and may prohibit vehicles from using cleats or spikes on wheels; 2) in the event of inclement

weather, floods, or other causes in which nonuse of a public road is necessary, a supervisor

may prohibit use of the road or regulate the type of traffic that may be used on the road; 3)

the board may protect its roads from unusual or uncommon use, including regulating

maximum loads or weights, that is likely to injure or impair the roads' usefulness as public

highways; and 4) the board may close a road during its construction or repair.  Miss. Code

Ann. §§ 65-7-37, 65-7-43, 65-7-45, 65-7-53 (Rev. 2012).

¶8.     The Legislature also provides that the board of supervisors "*may* . . . declare any

section of the county road system abandoned . . . ."  Miss. Code Ann. § 65-7-121(1) (Rev.

2012) (emphasis added).  The board may abandon any section if it finds

> that one or more of the following circumstances are applicable to the section
> in question:
>
> (a) The section does not provide primary access to occupied properties;
>
> (b) Traffic on the section has for a period of at least ten (10) consecutive years
> been intermittent and of such low volume that no substantial public purpose
> is being served thereby;
>
> (c) The board of supervisors has, for a period of at least the previous five (5)
> consecutive years, not maintained such section as part of the county road
> system; or
>
> (d) For any reason, the public interest or convenience does not require the

6

section to remain open to the public or that it is in the public interest or convenience to close, vacate and abandon the section.

Miss. Code Ann. § 65-7-121(1) (Rev. 2012).

### 3. *Public Use*

¶9. Seyfarth's primary argument on appeal is that substantial evidence of public use does not exist. Yet, the decision by the Board that Seyfarth appeals is the decision not to abandon the road. He did not appeal the Board's initial decision to make the road public. The Board does not have to establish public use in a determination of whether to abandon a road; it must establish public use only when initially designating a road as public. Mount Airy Plantation Road was listed as public in the county road registry as evinced by the Board's minutes in June 2000. Testimony indicated that it had been maintained by the public since the 1980s. And indeed, the Legislature noted that the intent of the registry was to memorialize already-existing public roads, not to create new ones. Miss. Code Ann. § 65-7-4.1 (Rev. 2012). Thus, the presumption is that Mount Airy Plantation Road was a public road prior to June 2000.

¶10. A person aggrieved by a decision of the board of supervisors of a county may appeal to the circuit court within ten days from the date of the decision. Miss. Code Ann. § 11-51-75 (Rev. 2012). At the latest, the Board decided that Mount Airy Plantation Road was public on June 19, 2000. Seyfarth filed his bill of exceptions with the circuit court on July 28, 2016. To the extent that Seyfarth appeals any decision regarding the public use or nature of Mount Airy Plantation Road, his appeal is out of time. The ten day time limit is mandatory and jurisdictional, and when it is not complied with, the appellate court lacks jurisdiction over

the appeal. *Lowndes Cty. ex rel. Bd. of Supervisors v. McClanahan*, 161 So. 3d 1052, 1056 (Miss. 2015).

### 4. *Abandonment*

¶11. To the extent Seyfarth argues that the Board failed to provide substantial evidence regarding its declining to abandon the road pursuant to Section 65-7-121, his argument is misplaced. Section 65-7-121 leaves the decision *not* to abandon a road entirely within the discretion of the board of supervisors. Miss. Code Ann. § 65-7-121(1) (Rev. 2012) (emphasis added) (The board of supervisors "*may* . . . declare any section of the county road system abandoned . . . ."). The factors listed provide for the procedure the board must follow if and when it *does* determine to abandon a road; they do *not* provide mandates for when a board should or must abandon a road. This Court has recognized that the statute provides the "procedure for abandoning a road." *McClanahan*, 161 So. 3d at 1056; *see also Valley Road Action Comm. v. Lauderdale Cty. Bd. of Supervisors*, 97 So. 3d 1242, 1246 (Miss. Ct. App. 2012) (Section 65-7-121(1) "sets forth the requirements for a county board of supervisors to close, vacate, or abandon a public road."). This is also illustrated by the statute itself, which provides that "*any* proceedings under this section *shall* be documented in the official record of the county road system in accordance with the requirements of Section 65-7-4." Miss. Code Ann. § 65-7-121(6) (Rev. 2012) (emphases added). Section 65-7-4 provides that "[*c*]*hanges* to the county road system shall be recorded on this map as soon as is reasonably possible." Miss. Code Ann. § 65-7-4(1) (Rev. 2012) (emphasis added). A decision *not* to abandon a public road does not change the county road system in

8

any way and would not need documentation on the road system record; thus it is clear that the procedures of this chapter are the requirements the county must follow in order to allow it to abandon a road, not mandates for when it must or should abandon a road.

¶12. The only other way to find abandonment of a road is through a finding of disuse, which is informed by the law of adverse possession. *McNeely v. Jacks*, 526 So. 2d 541, 544 (Miss. 1988). Seyfarth does not argue that the road has been abandoned through disuse. Nor does it appear from the record that he would be successful doing so. He and another landowner use the road, and the public uses the road for allegedly improper purposes. This Court has held that each of those factors alone can defeat a claim of disuse. *Id.* at 545 ("If a public road runs through the property of one and deadends on the property of another, and for ten years the latter (and persons acting on his behalf and with his permission) are the only ones to use the road, no abandonment occurs. . . . [T]he owner of the land on whose property the road deadends is as much as any other a member of the general public, as able in law to interrupt the period of prescription."); *Barrett v. Pilgrim*, 317 So. 2d 382, 383 (Miss. 1975) (holding that the Court was without power to close a public road in private litigation without an order from the Board of Supervisors closing the road, and noting that "[m]ere non-user [sic] by a part or all the general public, or use by some members of the general public of a public road as a 'lovers' lane, whiskey cache or as a place for dumping garbage, will not constitute such an abandonment as to deprive it of its public character . . . .").

**5.     *Just Compensation***

¶13.    When a landowner claims compensation for land taken for a public road, the

9

landowner must petition the board of supervisors "at the next meeting after the laying out of the road or at the meeting when the report thereof shall be returned . . . ." Miss. Code Ann. § 65-7-61 (Rev. 2012). At the latest, the public nature of the road was laid out in June 2000. Seyfarth filed his bill of exceptions in July 2016. Any claim for compensation under Section 65-7-61 is untimely, and this Court lacks jurisdiction to review it. Seyfarth has not filed suit under the takings clause of the Mississippi Constitution. However, to the extent Seyfarth argues in his brief that he is entitled to just compensation under Mississippi Constitution, article 3, section 17, his claim is likewise untimely, as a three-year statute of limitations applies to actions brought under the Takings Clause of the Mississippi Constitution. *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 568 (Miss. 2017).

### 6. Abatement of Nuisances

¶14. The Mississippi Constitution gives county boards of supervisors full jurisdiction over roads, subject only to the regulations prescribed by the Legislature. Miss. Const. art. 6, § 170. The Legislature has required boards of supervisors to keep public roads open, subject only to limited exceptions, and it further prohibits obstruction of public roads. Miss. Code Ann. §§ 65-7-3, 65-7-7, 65-7-37, 65-7-43, 65-7-45, 65-7-53 (Rev. 2012); *see also* Op. Miss. Att'y Gen. 96-0421 (July 12, 1996). Seyfarth requests that the Board address his concerns by blocking public access to the public road, without citing any authority that would authorize the Board to do so. The Board does not have the authority to abate any nuisance by closing a public road to the public; its full jurisdiction over roads is subject to legislative regulations, which require that public roads be kept open and do not except situations in

10

which some of the public use the road to interfere with private property. Moreover, the sheriff of each county is charged with keeping the peace and enforcing the laws. Miss. Code Ann. § 19-25-67 (Rev. 2012). Seyfarth points to no authority that would allow the Board of Supervisors to compel law enforcement to continuously monitor the road. Further, "[i]t is within the sheriff's discretion as to how to allocate and deploy the resources of his office." Op. Miss. Att'y Gen. 2009-00747 (Mar. 5, 2010). Seyfarth offers no other methods by which the Board could address his concerns. The circuit court determined, without citation of authority, that the Board's duty to "maintain" public roads includes "proper usage by the public."[2] Seyfarth offers no authority to support the proposition that the duty to maintain roads encompasses ensuring only "proper" usage, nor does he offer any explanation as to how "proper usage" may be defined. Moreover, "the method and extent to which each road is maintained is within the discretion of the board[,]" unless a statutory provision mandates a certain method. Op. Miss. Att'y Gen. 97-0136 (Mar. 7, 1997). Seyfarth points to no statute that requires the Board to reasonably abate any nuisance on private property allegedly caused by the public nature of a road. Thus, we reverse the circuit court's order mandating that the county reasonably abate any nuisance and render judgment in favor of the Board on this issue. This holding does not preclude Seyfarth from petitioning the Board to employ means within its authority to address his concerns.[3]

---

[2]Seyfarth's concerns and the circuit court's sympathy for them are certainly understandable; however, on the record that is before this Court, Seyfarth does not have an available remedy.

[3]If the use of a road is "unreasonable, unusual, and dangerous to safe travel," the board is within its power to stop the usage within legal means available to it. *See* ***Collins***,

11

**CONCLUSION**

¶15.     Because the decision not to abandon the portion of Mount Airy Plantation Road at issue did not abuse the Board's discretion, this Court affirms the Board's decision and the circuit court's order affirming the Board's decision.  No authority exists for the Board to abate any nuisances in the manners suggested by Seyfarth, nor does the circuit court suggest any legal manner in which the Board may abate any nuisances; thus, the circuit court's order requiring that the Board reasonably abate any nuisances is reversed and rendered.

¶16.     **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

     **RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

45 So. at 855.